UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
YU SEN CHEN, individually and on behalf of
all employees similarly situated,

                Plaintiffs,

  -against-                              **MEMORANDUM & ORDER**
                                                  16-CV-4439 (PKC) (RLM)

MG WHOLESALE DISTRIBUTION INC.,
"ANDY" CHEUNG, and XIAO MIN YANG,

                Defendants.
----------------------------------------------------------X
PAMELA K. CHEN, United States District Judge:*

      Plaintiff Yu Sen Chen brings this action against Defendants MG Wholesale Distribution Inc., Andy Cheung,[1] and Xiao Min Yang for alleged violations of federal minimum wage laws under the Fair Labor Standards Act ("FLSA") as well as alleged violations of New York Labor Law. Before the Court is Defendants' motion for partial summary judgment. For the reasons stated below, Defendants' motion is granted. The Court also declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.

---

      * The Clerk of Court is respectfully directed to amend the caption to conform to the listing above.

      [1] At his deposition, Defendant Cheung stated that his name is Ming Cheung, although he goes by "Andy" on a day-to-day basis. (Andy Cheung Deposition ("Cheung Dep."), Dkt. 53-1, at 11:9-16.) He further stated that his last name is not "Zhang." (*Id.* at 11:17-18.) Therefore, the Court has directed the Clerk of Court to amend the caption accordingly. The Court will refer to Cheung by his correct name in this Order.

## BACKGROUND

### A. Undisputed Facts[2]

Plaintiff was hired by MG Wholesale—then known as WS Distribution (Cheung Dep. at 19:14-25)[3]—in or around June 1996 as a truck loader and driver's helper. (Defs.' 56.1 Stmt., Dkt. 54, at ¶ 3.) MG Wholesale is a restaurant supply wholesale business located in Maspeth, New York and is owned by Defendants Cheung and Yang. (*Id.* at ¶¶ 1-2; Yu Sen Chen Deposition ("Chen Dep."), Dkt. 53-3, at 14:25-15:21.) Three days each week, MG Wholesale opens at 6:30 a.m. and three days a week it opens at 7:00 a.m. (Cheung Dep. at 25:2.)

Plaintiff stopped working at MG Wholesale on or around August 4, 2016. (Pl.'s 56.1 Resp. at ¶ 4.) The Parties also agree that Plaintiff worked six days per week, although they sharply disagree about the number of hours he worked. (*Id.* at ¶ 5.) One of Plaintiff's responsibilities was to open the factory each morning. (Cheung Dep. at 25:3-4.) Per Defendants' policies, Plaintiff was required to, and did, clock-in at the beginning of each work day and clock-out at the end of each workday using a finger scanner. (Pl.'s 56.1 Resp. at ¶¶ 8-10.) Defendant Yang could, however, manually change the records, and she did so on occasion. (Xiao Min Yang Deposition II ("Yang Dep. II"), Dkt. 53-5, at 10:5-11.)

---

[2] The facts recited in this section are taken from the parties' Local Rule 56.1 submissions and the record evidence cited therein. (Defs.' 56.1 Stmt., Dkt. 54; Pl.'s 56.1 Response, Dkt. 56-1.) Where a party's Rule 56.1 Statement is cited and there is no contrary evidence in the record, the Court deems that fact to be undisputed and admitted. Unless otherwise noted, a standalone citation to a 56.1 Statement denotes that the Court has deemed the underlying factual allegation undisputed. Any citation to a party's Rule 56.1 Statement incorporates by reference the documents cited therein unless otherwise noted. Where relevant, however, the Court may cite directly to the underlying document.

[3] All page references are to the ECF pagination of the document, and not the document's internal pagination.

Chen was paid biweekly in cash, with a weekly salary between $588.46 and $600. (Plaintiff's Brief ("Pl.'s Br."), Dkt. 56, at 4.) Plaintiff signed wage statements and time sheets on each payday (Pl.'s 56.1 Resp., at ¶¶ 13-14), but he never read them (Chen Dep. at 58:9-12; 59:9-12; 91:12-23). Although he now disputes the accuracy of the pay and time records, Plaintiff never complained contemporaneously that they were inaccurate (Pl.'s 56.1 Resp. at ¶ 15; Chen Dep. at 90:12-20) and he did not keep independent records of his hours (Pl.'s 56.1 Resp. at ¶ 11). He also acknowledges that Defendants' wage and hour records are "facially adequate". (Pl.'s Br. at 6.)

### B. Purported Extra Work by Plaintiff

The crux of the dispute between the parties is the number of hours of work Plaintiff was compensated for each week. In his Complaint, Plaintiff alleges that he worked 78 to 84 hours per week from June 1996 to December 2014 and 72 to 81 hours per week from January 2015 to August 3, 2016. (Complaint, Dkt. 1, at ¶¶ 20-21.) In his opposition to summary judgment, Plaintiff states that he worked between 72 and 96 hours each week. (Pl.'s Br. at 5-6.) During his deposition, he contended that he worked "for about twelve hours a day" (Chen Dep. at 20:2-3) or "about ten or twelve hours a day" six days per week (*id*. at 96:7-16). And, finally, in his Response to Defendants' 56.1 Statement, Plaintiff claims that he worked "between 66 and 84 hours per week, and sometimes more." (Pl.'s 56.1 Resp. at ¶ 6.) Plaintiff alleges that "no matter how early [he] clock[ed]-in, how late [he] clock[ed]-in, [he would] get the same amount for [his] salary" (Chen Dep. at 48:8-10), and that "his hours were so high that his average hourly rate fell below [FLSA's] statutory minimum" (Pl.'s Br. at 2).

By contrast, Defendants argue that Plaintiff was promised a minimum weekly salary of $588.46 (Yang Dep. II at 27:9-16) and that his weekly compensation was the greater of $588.46 or the sum of: (1) an hourly rate for the first 40 hours worked; (2) overtime in the amount of one

3

and a half times his hourly rate; and (3) a "bonus hour" at his hourly rate for each day that he worked more than 10 hours in a day as recorded by the finger scanner (Xiao Min Yang Deposition I ("Yang Dep. I"), Dkt. 53-4, at 33:11-34:14; Yang Dep. II at 23:10-17). Defendants submitted wage statements and time sheets that they allege demonstrate that Plaintiff was properly and adequately compensated based on the hours recorded by the finger scanner system. (*See* Dkts. 53-8 and 53-9.) Plaintiff does not dispute that these records are "facially adequate". (Pl.'s Br. at 6.)

In response to the wage and hour records, Plaintiff argues that Defendant Yang manually "fixed the time" recorded by the finger scanner to artificially lower Plaintiff's hours. (Chen Dep. at 78:6-8; *see also id.* at 85:18-20.) Furthermore, Plaintiff contends that although his signature (or what appears to be his signature) is on each page of his wage statements and time sheets, these records have been altered since he signed them or, alternatively, he never signed the records and someone forged his signature. (*Compare* Chen Dep. at 24:10-11 ("I signed the document, but . . . I have no knowledge of the content."); *id*. at 24:22-24 ("I can identify my signature. Other than that, I don't have no [sic] knowledge of the contents."); *id.* at 25:12-19; 26:16-20; 27:15-21; 28:19-25, 30:17-19; 33:7-18; 34:2-8; 60:14-16, *with id.* at 25:24-25 ("I can swear to you that I have not seen those before and I did not sign those either."); *id.* at 29:25-30:2 ("My gut feeling tells me that I never signed on any piece of paper with this content."); *id.* at 108:21-23 ("Q: So none of the signatures that appear on any of the pages . . . are yours? A: That's right."); *id.* at 28:16-18; 29:5-10; 30:6-8; 37:3-5; 38:19-39:2; 39:20-21; 40:5-8; 41:16-18; 61:2-5; 62:12-14; 68:22-24; 72:17-21; 77:6-7.)

## C. Procedural History

Plaintiff commenced this action on August 9, 2016. (Dkt. 1.) On November 16, 2016, Plaintiff voluntarily dismissed Counts Three and Four of the Complaint. (Dkt. 26.)[4] After the close of discovery, the parties appeared for a pre-motion conference concerning Defendants' request to file a motion for summary judgment on the remaining federal claim. With the Court's leave, on July 17, 2017, Defendants filed the present motion for partial summary judgment. (Dkt. 51.)

## LEGAL STANDARD

Summary judgment is appropriate where the submissions of the parties, taken together, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986) (summary judgment inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law"). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The initial burden of "establishing the absence of any genuine issue of material fact" rests with the moving party. *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010). Once this burden is met, however, the burden shifts to the nonmoving party to put forward some evidence establishing the existence of a question of fact that must be resolved at trial. *Spinelli v. City of N.Y.*, 579 F.3d 160, 166-67 (2d Cir. 2009); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). A mere "scintilla of evidence" in support of the nonmoving party is insufficient; "there must be evidence on which the jury could reasonably find for the [non-

---

[4] Count Three alleged a violation of the FLSA's overtime wage requirements. Count Four alleged a violation of New York Labor Law's overtime pay requirements.

movant]." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (quotation omitted; alteration in original). In other words, "[t]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quotation omitted).

In determining whether a genuine issue of fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). The Court also construes any disputed facts in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157-59 (1970). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247-48.

## DISCUSSION

### A. Federal Minimum Wage Claim

Under Section 206 of the FLSA, "[t]o establish liability on a claim for underpayment of wages, 'a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work.'" *Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442, 472 (S.D.N.Y. 2015) (quoting *Kuebel v. Black & Decker, Inc.*, 643 F.3d 352, 361 (2d Cir. 2011)); 29 U.S.C. § 206(a). "In particular, an employee must be paid at least minimum wage." *Salinas*, 123 F.Supp.3d at 361 (citing 29 U.S.C. § 206(a)). To determine whether an employee was compensated above the required federal minimum wage, the Court must calculate the employee's average hourly wage, which is calculated as follows: "the total wage paid . . . during any given week is divided by the total time [the employee] worked that week." *United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 490 (2d Cir. 1960); *see also Thind v.*

6

*Healthfirst Mgmt. Servs., LLC*, 2015 WL 4554252, at *4 (S.D.N.Y. July 29, 2015) (citation and internal quotation marks omitted). The federal minimum wage for the period in question was $7.25 per hour. 29 U.S.C. § 206(a)(1)(C); *Armata v. Unique Cleaning Servs., LLC*, 2015 WL 12645527, at *5 n.5 (E.D.N.Y. Aug. 27, 2015). Therefore, to state a claim under Section 206 of the FLSA, Plaintiff must prove that the total amount he was paid in a given week (between $588.46 and $600 per week) divided by the number of hours he worked in a given week must be less than $7.25 per hour.[5]

Even assuming *arguendo* that the Court adopts Plaintiff's position that Defendants' records are inaccurate, and that the Court should instead rely solely on Plaintiff's recollection, (Pl.'s Br. 7-8); *see also Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 88 (E.D.N.Y. 2012) ("[W]hen an employer fails to maintain accurate records . . . courts have held that the plaintiff['s] recollection and estimates of hours worked are presumed to be correct." (internal quotation marks omitted)), there is still no genuine dispute as to any material fact such that a reasonable jury could find in Plaintiff's favor.

Plaintiff concedes that he was paid biweekly in cash, with a weekly salary between $588.46 and $600 during the relevant period. (Pl.'s Br. at 4.) Therefore, by Plaintiff's own admission, "[d]uring the period that Plaintiff was paid $588.46[,] Defendants are in violation of the FLSA's minimum wage violations where Plaintiff worked in excess of 81.17 hours in a week, and 82.76 hours where Plaintiff was paid $600 per week." (*Id.* at 6.) Plaintiff claims in his opposition brief that he worked between 72 and 96 hours each week (*id.* at 5-6) and in his Response to Defendant's

---

[5] The Court observes that in five work weeks during the time period covered by Plaintiff's claims, Defendants' wage records show an amount owed of less than $588.46. (Dkt. 53-8, at 31, 37, 49; Dkt. 53-9, at 20, 22.) The Court construes Plaintiff's concession that he was paid a weekly salary between $588.46 and $600 (Pl.'s Br. 4) to include those weeks as well. This is consistent with Defendant Yang's statements that Plaintiff was paid, at a minimum, $588.46, even if he worked fewer hours. (Yang Dep. I at 33:11-34:14; Yang Dep. II at 23:10-17).

56.1 Statement, claims that he worked "between 66 and 84 hours per week, and sometimes more" (Pl.'s 56.1 Resp. at ¶ 6). These statements, however, are belied by Plaintiff's deposition testimony, to which he has asked this Court to give great weight. (Pl.'s Br. at 8-9.)

First, Plaintiff repeatedly stated during his deposition that he worked "for about twelve hours a day", six days per week. (Chen Dep. at 20:2-3; *see also id.* at 96:7-9 ("I can tell you on average that I worked for about ten or twelve hours a day."); 96:14-16 ("I can only give you average that I worked about ten–plus or twelve hours a day.").) Accepting this as true, there is no genuine dispute of material fact at issue in this case. *See Anderson*, 477 U.S. at 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). If Plaintiff worked 12 hours per day, 6 days per week, he would have worked 72 hours per week, making his hourly rate $8.17 (assuming a weekly salary of $588.46) or $8.33 (assuming a weekly salary of $600), well above the federal minimum wage in effect during his employment.

Second, while Plaintiff states with relative consistency that he started work each day at approximately 5:40a.m. (Chen Dep. at 63:4-5), Plaintiff gives a broad range of times he may have clocked-out. He claims that his end time depended on where he was on any given day: "Sometimes 6:00[p.m.]. Sometimes 7:00. Sometimes 8:00. Sometimes 9:00." (*Id.* at 20:17-20.) However, Plaintiff also states that he sometimes clocked-out "as early as 4:00ish or 5:00[p.m.]." (*Id.* at 97:3-4.)[6] When asked if he had evidence of what he believed to be the correct clock-out

---

[6] (*See also* Chen Dep. at 37:9-12 ("A lot of time when I finished my work, it's not 4:00 p.m. It's not 3:00 p.m. A lot of time, it was 8:00 at night. A lot of time, it was even 11:00 at night."); 55:8-10 ("All I can tell you is basically, I always get off after 5:00, around 6:00, and on my recollection, you know, I have never got off work that early."); 64:9-10 ("I usually clock-out around 6:00, 7:00, 8:00, or 9:00, but nothing like this."); 66:5-7 ("[I]t's quite often for me to clock-out around 8:00ish, 9:00."); 66:25-67:2 ("Most of the time, I went back around 7:00, 6:00. Sometimes 8:00."); 67:14-15 ("I always started before 6:00. I always worked for them until 7:00, 8:00."); 79:25-80:4 ("[W]hen [I did] clock-out, I'm having difficulty because I don't remember

times, Plaintiff stated that "I can tell you, and I have said that the earlier time I clock-out was 5:00ish, and sometimes—most of the times are late around 7:00 or 8:00, but if you want me to put down precisely what time, it is beyond me. I cannot do it." (*Id.* at 87:22-88:2; *see also id.* at 88:16-18.) The most specific evidence of Plaintiff's exact work hours is his claim that he "usually" had "three early days and three late days" with "[t]he earliest [he got off work being], like 4:00ish, 5:00, and sometimes it's like, late, like 7:00 or 8:00[p.m]." (*Id.* at 95:12-15.) Construing this in the light most favorable to Plaintiff—that is, assuming he worked from 5:40a.m. to 5:00p.m. on his "early" days and from 5:40a.m. to 8:00p.m. on his "late" days—he worked at most 77 hours per week, making his hourly rate $7.64 (assuming a weekly salary of $588.46) or $7.79 (assuming a weekly salary of $600). Plaintiff's own testimony, therefore, fails to establish a genuine dispute of material fact as to whether he was paid at least minimum wage for all hours he worked. The record shows that he was.[7] In sum, there is not a "scintilla" of evidence, *Hayut*, 352 F.3d at 743, on which "a fair-minded jury could return a verdict for [him]," *Anderson*, 477 U.S. at 252. As discussed, using Plaintiff's own testimony about the number of hours he worked—*i.e.*, that he worked 12 hours per day for a total of 72 hours per week or that he worked three early days and three late days for a maximum of 77 hours per week—no jury could find that Plaintiff worked

---

exactly when on each day, but it has always been 6:00 or 7:00 and sometimes 8:00."); 80:7-8 ("Some days, I left 5:00, but most of the time, I left 6:00, 7:00, or 8:00."); 84:17-19 ("I usually -- the earliest I got off was like 5:00, but most of the time I finished my day around 6:00, 7:00, and 8:00."); 84:24-85:2 ("The earliest day I came back to sign out, it was at 5:00, but usually, I sign out at 6:00, 7:00, or 8:00."); 96:13-14 ("Like at 4:00 or 5:00 when I came back, the latest can be like 8:00 or 9:00.").)

[7] Even assuming Plaintiff worked until 9:00 p.m. on his "late" days, he worked a maximum of 80 hours per week, which is still below the 81-hour per week minimum threshold Plaintiff agrees is required establish a FLSA violation. (Pl.'s Br. at 6.) In order to prevail, Plaintiff would have to demonstrate that, at a minimum, he worked, on average, more than 13.5 hours per day, which, with a clock-in time of 5:40a.m., would mean that he had to, on average, have worked until after 7:10p.m. six days per week.

9

more than 81.17 hours in a given week, which is the minimum number of hours that Plaintiff would had to have worked to be paid less than minimum wage.[8] Furthermore, Plaintiff admits that he has no extrinsic evidence of the number of hours he worked from which the Court can find a genuine dispute of material fact. (*See* Chen Dep. at 21:20-22:10; 55:6-56:6; 65:2-4; 66:5-16; 67:9-23; 68:2-9; 79:25-80:4; 80:16-22; 87:17-88:2.) Therefore, Defendants' motion for summary judgment on Plaintiff's remaining federal claim is granted.

### B. Supplemental Jurisdiction

Having disposed of Plaintiff's only remaining federal claim, the Court declines to exercise supplemental jurisdiction over Plaintiff's claims arising under New York Labor Law. *See* 28 U.S.C. § 1367(c)(3). Where "federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003); *see also Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial the state claims should be dismissed as well.").

Accordingly, this Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, and dismisses them without prejudice, pursuant to 28 U.S.C. § 1367(c)(3).

---

[8] Plaintiff's claim that Defendants' records are inaccurate is irrelevant in light of the fact that Plaintiff's recollections do not support that he worked the requisite number of hours in any week to support a FLSA minimum wage claim.

## CONCLUSION

For the reasons stated, Defendants' motion for summary judgment is granted as to Plaintiff's sole remaining federal claim in the Complaint, which is dismissed with prejudice, and the Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claims, which are dismissed without prejudice to being refiled in state court. The Clerk of Court is respectfully requested to enter judgment and terminate this case.

SO ORDERED.

/s/*Pamela K. Chen*
PAMELA K. CHEN
United States District Judge

Dated: Brooklyn, New York
November 14, 2017