UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - X

| | |
|---|---|
| YU SEN CHEN, individually and on behalf of all other employees similarly situated, | 16-CV-4439(PKC) |
| Plaintiff, | United States Courthouse Brooklyn, New York |
| -against- | |
| MC WHOLESALE DISTRIBUTION INC., "ANDY" ZHANG, XIAO MIN YANG, | |
| Defendants. | Monday, April 10, 2017 11:00 a.m. |

- - - - - - - - - - - - - - - - X

TRANSCRIPT OF CIVIL CAUSE FOR PREMOTION CONFERENCE
BEFORE THE HONORABLE PAMELA CHEN
UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S:

For the Plaintiff: HANG & ASSOCIATES, PLLC
136-18 39th Avenue
Suite 1003
Flushing, New York 11354
BY: WILLIAM M. BROWN, ESQ.

For the Defendants: BORRELLI & ASSOCIATES, PLLC
1010 Northern Boulevard
Suite 328
Great Neck, New York 11021
BY: DONG PHUONG V. NGUYEN, ESQ.

Court Reporter: DAVID R. ROY, RPR
225 Cadman Plaza East
Brooklyn, New York 11201
drroyofcr@gmail.com

Proceedings recorded by Stenographic machine shorthand, transcript produced by Computer-Assisted Transcription.

(In open court.)

THE COURTROOM DEPUTY: Civil cause for premotion conference, Docket 16-CV-4439, Chen versus MG Wholesale Distributing, Inc.

Could the parties please state their appearances for the record starting with Plaintiff.

MR. BROWN: William Brown for the plaintiff. Good morning, Your Honor.

THE COURT: Good morning.

THE COURTROOM DEPUTY: And please be sure to use the microphone.

MR. BROWN: Thank you.

MS. NGUYEN: Good morning, Your Honor. Dong Phuong Nguyen for all the associates for MG Wholesale.

THE COURT: Good morning.

MS. NGUYEN: Good morning.

THE COURT: All right. So we are here on the second premotion conference request of the defendant. And just to recap where we are, back in January of this year the defendants moved to file summary judgment motion, I guess largely aimed at the Fair Labor Standards Act or FLSA claim for probably, I gather the argument was I should dismiss that claim, and then I declined to exercise supplemental jurisdiction over the other state law claims.

At the time we had our last conference, I denied the

request to file the summary judgment motion at that time because as I understood it, there was some more discovery that the plaintiff wanted to do. I gather that that has now happened. Notably the defendants were deposed, and I gather there was some surveillance tape and other information that was provided.

Is that right?

MR. BROWN: Yes.

THE COURT: Okay.

MR. BROWN: There was actually -- there is a small outstanding issue with the surveillance footage. They produced two segments of video during the relevant period.

THE COURT: Right.

MR. BROWN: They have claimed that these are the only two segments they have, and I am willing to credit that as long as they provide, you know, some sort of affidavit from their client claiming that these are the only two that were saved.

THE COURT: Okay.

All right. But so putting aside that issue for the moment, what I gather now, though, from the more recent submissions from the parties is that there is a slightly different issue at play here, and it has to do with some potential negotiated resolution of the FLSA claim before me. It sounds like the plaintiffs are willing -- the plaintiff,

rather, is willing to, in effect, forego, his word, his federal claim and then try to join his New York Labor Law wage claims to a pending State Court case.

Is that right?

MR. BROWN: That's right. And it's also a wage in our case. The New York case is a claim for untimely wages --

THE COURT: Okay.

MR. BROWN: -- which was brought substantively because it discussed -- it was first found out during discovery. The issues would have involved pretty much the same kind of discovery. So in terms of judicial economy in my perspective, because the FLSA and New York Labor Law in terms of minimum wage offer almost identical substantive relief, I don't see any reason why we can't just have it all in one case in state court.

THE COURT: Right. But explain to me the statute of limitations issues. What I gather the sticking point is that if you just withdraw your claims, you lose the benefit of the safe harbor for statute of limitations purposes?

MR. BROWN: That's right.

THE COURT: That applies to the state law claims; is that the issue?

MR. BROWN: The state law claims were already filed, so -- in the state court --

THE COURT: Okay.

MR. BROWN: -- so that's not an issue.

THE COURT: Okay.

MR. BROWN: The issue is if we were to voluntarily withdraw our FLSA and New York Labor Law claims and then refiled it in New York courts, the statute of limitation would be six years from the date we filed in federal court. We wouldn't get any tolling. If we were to voluntarily withdraw, we would need a tolling treatment from the defendants agreeing for us to toll the New York Labor Law claim from the date of our federal filing, which I see as a reasonable resolution. The safe harbor would apply if the case were dismissed for jurisdictional reasons. So if this Court were to agree with the defendants that the -- there's no FLSA claim and we're to decline exercise of jurisdiction --

THE COURT: Right.

MR. BROWN: -- that would fall under safe harbor because it would be dismissed based on jurisdiction.

THE COURT: I understand exactly what you are saying about what might happen. What I am not clear on, though, is why is there a statute of limitations issue though? Because I think what you just said is it is a six-year statute of limitations for the state law claim.

MR. BROWN: Right.

THE COURT: If you refiled, let's say tomorrow. Let's suppose the defense does not give in and you are forced

to basically litigate the summary judgment motion and have me rule on it one way or the other, why is your cause of action in peril? It sounds like you have more than enough time still to run under the statute of limitations?

MR. BROWN: It wouldn't be in complete peril, but we would lose a portion of our claim. So he worked there prior to 2008. So if we filed, say, a statute of limitation going back to 2011 -- so we would lose two years if we were to file tomorrow.

THE COURT: I see.

Okay. But it sounds like you do not have much of a bargaining position, because if you -- well, that is not true. I guess if you do not withdraw, then we go through the exercise of a summary judgment motion. You could either win that, in that your FLSA claim survives and your case goes forward before me while your state court case goes forward as well. Although, clearly, whether or not I might not exercise supplemental jurisdiction if you have already a pending state court case that covers most of the claims, right, but not all?

MR. BROWN: It's the state court claim is just the late payments issue.

THE COURT: I see. Okay. I see. So you need the bulk of your state court claim still here?

MR. BROWN: Yes.

THE COURT: Okay.

MR. BROWN: And then --

THE COURT: That is right.

All right. So for you, the only real option if the defense does not want to agree to let you stipulate to a summary judgment -- or actually, let me go back.

They want you to stipulate to summary judgment on the FLSA claim, right?

MR. BROWN: Yes, Your Honor.

THE COURT: But you do not want to do that?

MR. BROWN: The reason why I don't want to do that is because if I were to stipulate to summary judgment, that would require me to make an admission as to the hours that he worked. They're claiming that he worked fewer hours than what our claim is, and that's their basis for summary judgment. So if I were to say, We agree. We have to take this on this ground, we would basically be admitting that he worked, you know, ten less hours per week than --

THE COURT: You would have a collateral estoppel issue --

MR. BROWN: Yes.

THE COURT: -- in the state court proceeding?

MR. BROWN: Yes.

THE COURT: Okay. That makes some sense.

All right. So have a seat.

I guess, Ms. Nguyen, right?

MS. NGUYEN: Yes, Your Honor.

THE COURT: Okay. Tell me why, I guess, it is not in -- well, I think I know why it is not in your client's interest, but you are rolling the dice to some extent if you force the plaintiff to go through a summary judgment motion. You could win it or you could lose it. I know what your arguments are about the records showing that the plaintiff was paid more than minimum wage, even assuming he worked the extra hours that he said, right?

MS. NGUYEN: Yes.

THE COURT: But the one wrinkle I see in your argument is that when I looked at your letter -- obviously, I do not have the benefit of all the record -- your calculation of $7 and some change, even crediting his claim that he worked, I think, 72 hours in a week does not account for any overtime, right? So that would just be the straight hourly rate. I just, you know, did the math. I think it was 500 and something. $550 divided by 75 hours, and that came out to, I think, $7.63, which you maintain correctly is above the minimum wage. But if he worked 72 hours, he would be entitled to overtime, right?

MS. NGUYEN: Well, Your Honor, Plaintiff in this case is covered by the motor carrier exemption.

THE COURT: Oh, okay. So he would not be entitled -- wait. So then, FLSA, does that apply to him at

all?

MS. NGUYEN: Minimum wage under what Plaintiff is alleging.

THE COURT: Okay. But correct me if I'm wrong, if the motor carrier exception applies, I thought FLSA does not apply at all to his claim?

MR. BROWN: Just the overtime rules of FLSA don't apply, so minimum wage still applies.

THE COURT: I see. Okay.

So what would your argument be on summary judgment, their records do not tell the whole story?

MR. BROWN: There's two arguments. One is a matter of law and one is a matter of fact. One, my understanding of the FLSA is that the FLSA applies to whatever minimum wage is higher, either the federal or the state. So the FLSA itself in New York applies to New York minimum wage.

THE COURT: Okay.

MR. BROWN: So therefore, it doesn't matter whether you make -- you know, even if we were to credit factual arguments they make, he would still be under the FLSA because under the regulations, again, says if you -- the FLSA applies to the higher of the minimum wages.

THE COURT: The New York minimum wage, is that above $7.63?

MR. BROWN: Yes.

THE COURT: Okay.

All right. So that is your argument. But all you have -- so the defendants' argument goes is your Plaintiff's statement that he worked between 72 and 84 hours each week?

MR. BROWN: Yes.

And the -- there are records, they're punch-clock records. But my client has continuously said that the records could not possibly be accurate because the times on there were well beyond the -- you know, they still -- the start times were beyond the times he started and the end times were well before the times he had ever come back. So when he saw them, he said that they were unbelievable because, you know, basically, I never came back before 3:00 -- 3:00 o'clock. How could this be on the records? So he believes that there was some altercations in the records.

THE COURT: But the problem, I think, according to Defendants, is that he signed these time sheets. Did he sign all of them?

MR. BROWN: They are signed. It's a little strange, I have to admit. They are signed and they did produce the originals and he did recognize the signature as his, but he still claims that he didn't sign them, so -- I mean, his argument is that they were either forged, the signature was forged itself; or they were somehow digitally changed without -- you know, changing his signature.

THE COURT: Okay.

MR. BROWN: You know, something along those lines.

But the fact of the matter is, he still claims that the record -- he recognized that he signed a form were he was paid, but he doesn't recognize the form that was produced. He said it's a different -- it looks different. It's a different kind of record.

THE COURT: Huh? You realize you have a bit of an uphill battle just based on that recitation of the record. In other words, I do not think it is inaccurate to say that the defendants are going to bring to bear the summary judgment motion a wrath of signed time sheets bearing what is undisputedly your client's signature, and against that and also some time punch-card records that similarly reflect, I guess, what is in the time sheets he signed. But I guess that is merely his statement that he knows he worked longer than the punch card or the timesheets indicate, and that somehow there must have been some doctoring going on?

MR. BROWN: That's his claim. And take it to mind that this client actually lives in the warehouse, and he was the only person in the warehouse, you know, before the warehouse would open and he was required to do some work. So he may have punched in after he was already -- when the shop opened, he was already doing an hour or two of work a day.

THE COURT: Okay.

MR. BROWN: So there's other issues along those lines that complicate the time cards.

THE COURT: All right.

All right. Have you figured out how much potential damage he would lose if you voluntarily withdrew this action and decided to combine everything in the state and lose those two years that you mentioned?

MR. BROWN: I think it will be fairly substantial. I mean, just give me one minute. I can kind of make an estimation.

THE COURT: I have asked because, obviously, what you are doing is buying yourself a summary judgment motion by not agreeing to stipulate -- which I understand why, because you do not want to be barred from asserting certain facts in the state claim case, I gather. I wonder if you can come up with some sort of stipulation that does not require an admission of fact --

MR. BROWN: But that's what the --

THE COURT: -- because all you are doing is saying you could not show that there are undisputed -- no. That would not help you.

Go ahead.

MR. BROWN: That's what my resolution would do actually. The primary objective from what I see of the defendants' motion is procedural. They want to get the case

out of federal court and moved into state court. My proposal was that would allow them to achieve that objective. It would allow them to have the case in state court.

THE COURT: Okay.

MR. BROWN: Because the relief under the New York Labor Law and FLSA is so similar, substantively their motion, I don't see achieving too much. And again, because of the safe harbor rule, the statute of limitation wouldn't be affected if the Court were to rule in favor of the defendant and to the client supplemental jurisdiction. So my proposal was, with prejudice withdrew the FLSA claim, and then move the case into New York Labor -- into the New York court, as long as the statute of limitations was -- which is tolled back to the date of federal filing, which is what would happen anyway if the Court were to dismiss the claims.

Really the issues that they're going for I feel like are more right for trial anyway, given the issues with the time cards. But these issues whether -- you know, the number of hours worked would be decided by a trier of fact at trial anyway.

THE COURT: Right.

MR. BROWN: So for me this makes sense why we have to have these issues looked at now. Only the procedural issue of which court the case is in would be the main issue. And again, the plaintiff is willing to voluntarily move the case

into state court.

THE COURT: So hang on a just second, though.

You are willing to withdrew your FLSA claim, correct?

MR. BROWN: With prejudice, yes.

THE COURT: I'm sorry. Does that not then mean you will not get the benefit of the safe harbor, because I thought the only way you get the safe harbor is if it does not voluntarily terminate?

MR. BROWN: That's why we would ask for a tolling agreement. The tolling agreement would say -- then agreed to, and that is why I'm here and we're having the FLSA motion. I think it's kind of pointless -- I'm sorry. I think it's kind of pointless that we have to go through this motion practice for something that I'm willing to concede to anyway.

THE COURT: Well, I do not know if the defendants also want to knock out two years of your claim as well. You say that all they want to do is get this into state court instead of here. One of the benefits to them was that if they -- well, I guess if they go through the motion practice --

MR. BROWN: We would get a safe harbor anyway.

THE COURT: -- you would get the safe harbor. That is a fair important.

So what do you say to that, Ms. Nguyen?

MS. NGUYEN: Well, Defendants want judgment to be entered on the record on summary judgment, which is why we filed the premotion conference twice.

THE COURT: Right.

MS. NGUYEN: So, you know, it is my clients' desire that they want summary judgment to be answered.

So to address counsel's point that, you know, he wants to toll the statute of limitations, an option that we suggested to him was to stipulate to summary judgment --

THE COURT: Right.

MS. NGUYEN: -- and have language in there saying that tolling applies to the same effect as if the Court were to dismiss the statute -- the state claims.

THE COURT: Right. But what about his concern that by stipulating to summary judgment, he is, in effect, admitting your version of the facts, which is that the plaintiff didn't work the 72 to 84 hours that he claims? That is their concern, right?

Is there a way for him to stipulate to summary judgment without having to concede the undisputed facts that make you win? In other words, can he simply agree that he cannot prove that there is sufficient disputed material facts?

MR. BROWN: I mean, that --

THE COURT: I mean, it seems to me not a good thing for the plaintiff to do.

MR. BROWN: Yeah. But essentially, that's what we're doing, though. By agreeing to voluntarily withdraw the case with prejudice --

THE COURT: Right.

MR. BROWN: -- they're getting their judgment. The Court's going to so order it, and that's in their favor saying that we can't ever bring another FLSA claim again.

THE COURT: Okay.

MR. BROWN: So again, I just don't see the advantage of having to go through the motion practice.

THE COURT: So you want the defendants to agree to toll the statute of limitations with respect to that two-year period that would be time barred in state court, right?

MR. BROWN: Just the New York Labor Law claim for this two year -- just to the date that the federal case was filed. So the New York Labor Law claim would remain intact.

THE COURT: And would that be binding on the state court simply because the defendants agreed to that?

MR. BROWN: My understanding is that it would. If you stipulate to the tolling agreement, then the Court --

THE COURT: Well, let me ask: It seems to me that that makes some sense.

Why do you want a judgment here, other than to use it against the plaintiff in state court.

MS. NGUYEN: Well, Your Honor, it's not to

Defendants' advantage to, you know, dismiss it. There's just no benefit to my client agreeing to, you know, voluntary dismissal. But we --

THE COURT: Well, conserving resources might be the only thing. Because if you win, then you are still going to have to battle him on two-thirds of his state law claim there because he could still take the nontime-barred portion of his state law claim and merge it with his existing state law claim. So there is a certain efficiency for you, right, of not having to brief it and then still fight with him about the state law claim in state court, right? Because obviously if you win and I dismiss the FLSA, I am going to not exercise supplemental jurisdiction. So you will have some portion of that claim, but I guess, depending on how long it takes the summary judgment to get briefed and decided, that could chip away even further, I think, at your claims, correct?

MR. BROWN: Yeah, it would.

THE COURT: Okay. So, I mean, obviously, that in the defendants' mind is probably an advantage to them. More time here means lease liability in state court.

And I understand that you do not want to have to concede, but there is a certain efficiency. And then if you lose, then you are going to have to go to trial here on all the claims as well as continue to fight with the plaintiff in state court.

Now, that is your calculation -- or that is your decision to make from the strategic point of view. I am not going to force you. But it does strike me that there is some efficiency here by not continuing to litigate the FLSA claim here, even if you win.

MS. NGUYEN: And that is certainly a very accurate take on the matters, which is why we're -- you know, the option is still open to stipulate to summary judgment.

THE COURT: But what would that look like? What would it say? We agree that the defense would win on summary judgment on the FLSA claim, that's a simple iteration of it, right?

MS. NGUYEN: Yes.

THE COURT: What would you do, then, in the state court proceeding? Would you then waive that in front of the state court judge and say, He stipulated, essentially that he could not show enough material facts about the wages he was paid or the hours that he worked? Could you use that, do you think, against him as either as *res judicata* or collateral estoppel?

MS. NGUYEN: Well, the language of the stipulation we would simply use Plaintiff's sworn testimony that -- in his deposition to show that there are no issues of material facts. So, for example, Plaintiff testified that he was paid between 11 to 1200 each pay week, payroll period, which is two weeks

divided by 72 hours per week. So that works out to $7.64, which is above federal minimum wage. That's the sort of language that we would be putting in. And whether or not, you know, that comes to play for the state court matter, that is the basis for the analysis.

THE COURT: Well, according to you, that does not kill your state court claim, right, because the minimum wage is higher?

MR. BROWN: Well, again, if you read his entire deposition transcript, he's kind of all over the place. He says one thing and then he says another thing.

THE COURT: Well, let me ask you: So under the state labor law regime, too, he would get overtime, right; there isn't this motor carrier exemption?

MR. BROWN: The New York regulations say that the motor carrier exemption carries over. They're very -- there is legislation to change that, but currently...

THE COURT: Okay. Well, folks, we are sort at a, I don't know, zero-sum game. I mean, unfortunately for the plaintiff, the defendant holds more cards in this situation because they can continue, as they are entitled to do, to move for summary judgment. I certainly cannot stop them and that means, at a minimum, delay for you in getting your claims to state court.

MR. BROWN: Well, there is also an additional cost

for the defendants. If they lose on the motion, there's also the issue of attorneys' fees. If they lose on the motion, we can include that, those fee shifting under the FLSA, so the defendants would be necessarily responsible for the plaintiff's attorney's fees if they --

THE COURT: If you are successful --

MR. BROWN: If we prevail --

THE COURT: -- at the very end?

MR. BROWN: -- on the motion, yes.

THE COURT: Not just on the motion, right? Don't you have to prevail in your claim at trial?

MR. BROWN: But I assume if we were to prevail on the summary judgment, we have a pretty good chance of, at least, winning part of the case at trial.

THE COURT: I wouldn't say that given what you have told me. It may be. I mean, I think you both explained to me the most salient evidence, and the best I think the plaintiff can hope for is I decide that notwithstanding the written, less refutable paper evidence that your client may convince the jury that he is right for all those reasons --

MR. BROWN: Right.

THE COURT: -- and maybe some of these other factors that you mentioned, namely, him living in the warehouse and working clearly off hours -- off clock. But I would not say it is a slam drunk. So I think both of you if this goes to

trial have a risk of losing, but I would not say it is necessarily so clear that paying attorney's fees is in the cards for the defendant.

MR. BROWN: It's just an added risk. I'm not saying it's a guaranteed thing. There's an added risk for them to go through the motion practice, as I see it, as somewhat unnecessary for the risk of having those added attorney's fees that their defense would be responsible for.

THE COURT: Well, let me say this: What I do not understand, though, is the only risk for you in this situation if you go through with the motion is losing the summary judgment motion and then the effect of it being -- having less of your state law claim to bring to the state court. But otherwise, if you prevail on summary judgment, you are going to litigate both your federal and state court claims just in front of a federal jury rather than a state jury, right?

MR. BROWN: Yes.

THE COURT: Okay. So I think there is a potential upside for you if you think you have a shot at winning the summary judgment motion. I mean, you are not going to lose anything and you will still have your state case on the more-late discovered wage issues, right?

MR. BROWN: Just the the timing. It would dispose of both of the proceedings.

THE COURT: Right.

Now, I do not know what to tell you, other than I am somewhat powerless in this situation. I cannot force the defendant to do what they do not think is in their best interest.

I agree, for what it is worth, Ms. Nguyen, that there is some potential upside for the defendants, even in terms of potential cost savings of not litigating a motion here. And then either way, I guess, you either -- if you lose the motion here, we are going to trial, and then you still have the state court case with the plaintiff and he keeps all of his state law claims here. Or you win and you shave off a little bit of the state law claims below, but he will still go forward with his full state action, and you will spend a fair amount of time and money briefing a summary judgment motion.

You know, there are advantage and disadvantages on both sides. I could see why you folks are a bit deadlocked on this one. But like I said, sadly, Mr. Brown, right --

MR. BROWN: Yeah.

THE COURT: -- I cannot do anything other than let the defendants file their motion if they want to.

You know, personally I would love it, too, if you went to litigate all the state law claims down there and withdrew the FLSA, because I see this as a difficult summary judgment, I will be honest with you. I think it is going to be a tough one for us based on what I have heard. Obviously,

when I see the full record, that may not be so difficult. But right now, I see it as a close call for both sides, obviously.

So with that, I gather, Ms. Nguyen, you still want to file your motion?

MS. NGUYEN: Yes, Your Honor.

THE COURT: Okay. So let's set dates. Perhaps you guys can talk further off-line and figure out how it makes sense to not go through with that process. But I will set the date and then we will wait to hear from you on your motion.

So how much time do you want?

MS. NGUYEN: Can I ask for 45 days, Your Honor?

THE COURT: Sure, 45 -- oh, we are sensitive about the fact that time is an issue for you, but last time we put it off because there was more discovery. I gather that -- you know what? This is your motion. I am going to give you 30. I am sensitive to the fact that, I guess, if Plaintiff loses at this point, he is going to have less of a state case to go forward.

So 30 days.

THE COURTROOM DEPUTY: May 10th.

THE COURT: Especially since this is your second time asking. So I am hoping that you have some of it prepared.

MS. NGUYEN: Yes, Your Honor.

THE COURT: Okay. May 10.

And how much time do you want?

MR. BROWN: Two to three weeks -- before June 1st would be fine, so, like, three weeks.

THE COURT: Three weeks.

And then two weeks for the reply.

THE COURTROOM DEPUTY: June 15th.

THE COURT: Okay.

What was the other date?

THE COURTROOM DEPUTY: June 15th.

THE COURT: No, before that?

THE COURTROOM DEPUTY: June 1st, and then May 10th.

(Pause in proceedings.)

THE COURT: So June 1 for the opposition and June 15th for the reply.

And as I may have mentioned before, perhaps not, I do try to follow the bundling rule, which means that you only serve each other on those dates and only on the last date, which is June 15th, do you file your representative submission with one courtesy copy to chambers. You do not have to follow this rule. It is my preference only because it makes it easier for me to give extensions of time because we have internal deadlines that you bump up against the more time that you seek. But if we do it this way, you can take as much time as you need.

I realize that it is less of an issue here, because

I imagine the parties are not necessarily going to agree to extend the deadline -- or at least the plaintiff is not, but... So do whatever you want. You can file it when you serve it, or you can wait until the last day. So for this one, I do not think it is going to make a big difference since I do not see the deadline getting extended given the situation.

All right. Anything else we need to address?

MR. BROWN: Yes. And just since we are all here, I think this is a good time and place to do this. Just the issue of the surveillance footage. I spoke with -- I haven't gotten a definitive yes or no on the issue of the affidavit claiming that there is no surveillance footage. I just want to see what the defendants' position is on that.

THE COURT: Well, did discovery close?

MR. BROWN: Discovery's closed, but there was an -- after discovery was closed, there was an order from the magistrate judge that they were to produce the surveillance footage.

THE COURT: Right.

MR. BROWN: It did, but there was only the two -- you know, the two segments. And I'm fine if they say there's no other footage, but I just want an affidavit, you know, to that effect.

THE COURT: Is there any problem with that,

Ms. Nguyen?

MS. NGUYEN: Well, Your Honor, discovery has closed, so -- and we have produced all the video clips that are in existence. So I don't see why we have to produce an affidavit saying that there are no video clips where I've been telling counsel -- he has it in writing -- that there's just nothing else to produce.

THE COURT: Is there some reason you think there might be others?

MR. BROWN: It just seems strange that there's only -- you know, there's only two, you know, that were saved. I just want to have an explanation or, you know, some sort of proof that there's nothing else.

THE COURT: Well, is there a custodian for the videotapes, somebody who --

MR. BROWN: Her client.

THE COURT: -- is going to attest to --

MR. BROWN: Her client.

THE COURT: -- how they were maintained; why there are only two?

MS. NGUYEN: Well, it's a private CCTE system, so it records over itself. So that's why, you know, my client only saved the two video clips to speak to Plaintiff.

THE COURT: Okay.

MS. NGUYEN: Because Plaintiff, apparently, had this

habit of clocking in and then going about his private business, showering, cooking breakfast, and whatnot while on paid time.

THE COURT: Okay.

MS. NGUYEN: So the reason why my client saved those two clips was to show Plaintiff, Hey, you know, this is what you do. Please stop doing that.

THE COURT: All right.

MS. NGUYEN: So that's why there are only two clips. By the time we received Plaintiff's discovery request, the system had already recorded over itself a couple of times.

THE COURT: Right. Was there ever any testimony about what you just represented your client would say?

MR. BROWN: No, there hasn't been, but...

And, again, it's a simple affidavit. I would be satisfied with the issue. But it's just a little strange to me that they are making an issue out of this. That's all.

THE COURT: Oh, about giving you an affidavit?

MR. BROWN: Yes.

THE COURT: Well, I mean, I guess I see why. It's some additional testimony by somebody about the nonexistence of other tapes. But it seems to me to put this issue to rest so that we do not have some battle later if a tape mysteriously appears, if you could have your client simply submit an affidavit to say, We have no other surveillance

tapes in our possession. That would be helpful.

So why don't you do that by Friday, just so we can get this done and move on to the briefing of the motion.

MR. BROWN: Thank you.

THE COURT: You know, my only concern is sometimes when lawyers represent things, it is less binding in some ways than when the client actually represents that he has no more tapes.

MS. NGUYEN: Well, Your Honor, for what it's worth, if there were videotapes, we would happily produce them because they would show that, you know, Plaintiff clocked in at certain times, he didn't do his work, and that the records are accurate. But unfortunately, the tapes are just -- do not exist anymore.

THE COURT: Right. Well, the plaintiff, obviously, would have a different view. He seems to believe that if there were more tapes, they might show him actually clocking in and doing the work he was paid to do, I gather, right? And so he seems concerned, if not suspicious, about the fact that the only videos that were saved seem to buttress the defendants' claim that he clocked in and then got paid for doing his personal business. So let's just put this to rest by submitting an affidavit or providing an affidavit to Plaintiff from your client indicating that there are no other surveillance tapes that have been saved.

MS. NGUYEN: Yes, Your Honor.

THE COURT: Okay. Thank you. And do that by Friday. That will be good so that all the discovery will be done.

MS. NGUYEN: Yes, Your Honor.

THE COURT: Okay. Terrific.

All right. Great. So look forward to hearing from you. If you guys resolve something in the interim, let us know.

MR. BROWN: Thank you, Your Honor.

THE COURT: Thank you. Nice seeing you.

(Matter concluded.)

--ooOoo--

*I (we) certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.*

*/s/ David R. Roy* — *December 13, 2017*

*DAVID R. ROY* — *Date*