UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

YU SEN CHEN, individually and on behalf of all other
employees similarly situated,

                            Plaintiff,

        -against-

MG WHOLESALE DISTRIBUTION INC., "ANDY"
CHEUNG, XIAO MIN YANG,

                            Defendants.

Docket     No.:     16-cv-4439
(PKC)(RLM)

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION FOR SANCTIONS PURSUANT TO 28 U.S.C. § 1927, THE COURT'S
INHERENT AUTHORITY, AND FEDERAL RULE OF CIVIL PROCEDURE 11(b)(3)**

Dong Phuong V. Nguyen, Esq.
Alexander T. Coleman, Esq.
Michael J. Borrelli, Esq.
BORRELLI & ASSOCIATES, P.L.L.C.
1010 Northern Boulevard, Suite 328
Great Neck, New York 11021
(516) 248-5550
(516) 248-6027
*Attorneys for Defendants*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES .................................................................................................ii-vi

PRELIMINARY STATEMENT ............................................................................................ 1

RELEVANT PROCEDURAL HISTORY .............................................................................. 4

ARGUMENT ........................................................................................................................ 16

     I.     THE COURT SHOULD SANCTION PLAINTIFF'S COUNSEL PURSUANT
            TO 28 U.S.C. § 1927 ........................................................................................ 16

     II.    THE COURT SHOULD SANCTION PLAINTIFF AND PLAINTIFF'S
            COUNSEL PURSUANT TO THE COURT'S INHERENT AUTHORITY ....... 22

     III.   THE COURT SHOULD SANCTION PLAINTIFF AND PLAINTIFF'S
            COUNSEL PURSUANT TO FED. R. CIV. P. 11(b)(3) ..................................... 23

     IV.   ATTORNEYS' FEES AND COSTS .................................................................. 28

CONCLUSION..................................................................................................................... 29

## TABLE OF AUTHORITIES

## CASES

Antonmarchi v. Consol. Edison Co. of New York,
  2012 WL 3126004 (S.D.N.Y. July 31, 2012) .......................................................................... 28

Ayala v. Looks Great Servs,
  2016 WL 3541548 (E.D.N.Y. June 23, 2016)........................................................................... 8

Brignoli v. Balch, Hardy & Scheinman, Inc.,
  126 F.R.D. 462 (S.D.N.Y. 1989)............................................................................................ 26

Brignoli v. Balch, Hardy & Scheinman, Inc.,
  735 F.Supp. 100 (S.D.N.Y. 1990) .......................................................................................... 26

Calloway v. Marvel Entertainment Group,
  854 F.2d 1452 (2d Cir. 1988)................................................................................................. 24

Capone v. Patchogue-Medford Union Free Sch. Dist.,
  2010 WL 2771845 (E.D.N.Y. July 13, 2010) ......................................................................... 17

Colucci v. New York Times Co.,
  533 F.Supp. 1011 (S.D.N.Y. 1982)........................................................................................ 16

Dagen v. CFC Grp. Holdings, Ltd.,
  2004 WL 856539 (S.D.N.Y. Apr. 21, 2004) ............................................................................ 3

Davidson v. Keenan,
  740 F.2d 129 (2d Cir. 1984)................................................................................................... 23

Eastway Constr. Corp. v. City of New York,
  762 F.2d 243 (2d Cir. 1985)................................................................................................... 24

Eisemann v. Greene,
  204 F.3d 393 (2d Cir. 2000)................................................................................................... 22

Elfoulki v. Brannons Sandwich Shop, LLC,
  2016 WL 3542458 (S.D.N.Y. June 22, 2016).................................................................... 25, 26

Fried v. Fried,
    113 F.R.D. 103 (S.D.N.Y. 1986).................................................................................... 26

Galonsky v. Williams,
    1997 WL 759445  (S.D.N.Y. Dec. 10, 1997)............................................................... 22

Gambello v. Time Warner Communications, Inc.,
    186 F. Supp. 2d 209 (E.D.N.Y. 2002).......................................................................... 24

Gordon v. Kaleida Health,
    2012 WL 1965671 (W.D.N.Y. May 31, 2012) ............................................................ 23

Greenberg v. Hilton Int'l Co.,
    870 F.2d 926 (2d Cir. 1989)......................................................................................... 24

Hargroves v. City of New York,
    2014 WL 1270585 (E.D.N.Y. Jan. 6, 2014).................................................................. 3

Kamen v. American Telephone & Telegraph Co.,
    791 F.2d 1006 (2d Cir. 1986)....................................................................................... 16

Keller v. Mobil Corp.,
    55 F.3d 94 (2d Cir. 1995)............................................................................................. 20

Kron v. Moravia Cent. Sch. Dist.,
    2001 WL 536274 (N.D.N.Y. May 3, 2001) ................................................................. 17

Lynch v. United Servs. Auto. Ass'n,
    491 F. Supp. 2d 357 (S.D.N.Y. 2007)......................................................................... 16

McBeth v. Gabrielli Truck Sales, Ltd.,
    768 F. Supp. 2d 383 (E.D.N.Y. 2010).......................................................................... 17

Mercy v. Suffolk Cty., New York,
    748 F.2d 52 (2d Cir. 1984)............................................................................................. 3

O'Brien v. Alexander,
    101 F.3d 1479 (2d Cir. 1996)....................................................................................... 24

Offor v. Ctr.,
    2016 WL 3566217 (E.D.N.Y. June 25, 2016)........................................................ 28

Offor v. Mercy Med. Ctr.,
    698 F. App'x 11 (2d Cir. 2017) .......................................................................... 28

Oliveri v. Thompson,
    803 F.2d 1265 (2d Cir. 1986)..................................................................... 16, 22, 23

Perry v. S.Z. Rest. Corp.,
    45 F. Supp. 2d 272 (S.D.N.Y. 1999) ................................................................... 26

Ramashwar v. Espinoza,
    2006 WL 36752 (S.D.N.Y. Jan. 6, 2006)............................................................. 25

Ransmeier v. Mariani,
    718 F.3d 64 (2d Cir. 2013)................................................................................... 22

Rodick v. City of Schenectady,
    1 F.3d 1341 (2d Cir. 1993)................................................................................... 23

Schlaifer Nance & Co. v. Estate of Warhol,
    194 F.3d 323 (2d Cir. 1999)............................................................................ 17, 27

Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,
    559 U.S. 393 (2010) ............................................................................................. 18

Simon DeBartolo Group, L.P. v. Richard E. Jacobs Group, Inc.,
    186 F.3d 157 (2d Cir. 1999)................................................................................. 24

Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.,
    682 F.3d 170 (2d Cir. 2012)................................................................................. 27

Umar Oriental Rugs, Inc. v. Carlson & Carlson, Inc.,
    757 F. Supp. 2d 218 (E.D.N.Y. 2010)................................................................. 23

United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO,
    948 F.2d 1338 (2d Cir. 1991)............................................................................... 16

Walker v. Smith,
   277 F. Supp. 2d 297 (S.D.N.Y. 2003) ................................................................... 20

Yu Sen Chen v. MG Wholesale Distribution Inc.,
   2017 WL 5499786 (E.D.N.Y. Nov. 14, 2017) ........................................... 11, 15, 27

## **STATUTES**

28 U.S.C. § 1331 ........................................................................................................ 4

28 U.S.C. § 1332 ........................................................................................................ 4

28 U.S.C. § 1367 ........................................................................................................ 4

28 U.S.C. § 1927 ................................................................................................. passim

29 C.F.R. § 782.2(b)(2)(i)(ii) ................................................................................... 17

29 U.S.C. § 206(a)(1)(C) ................................................................................... 18, 26

29 U.S.C. § 216(b) ................................................................................... 5, 7, 9, 18

489 U.S. 1009 (1989) .............................................................................................. 24

NYLL § 191 ................................................................................................... 2, 13, 21

NYLL § 195(1) .................................................................................................. passim

NYLL § 195(3) .............................................................................................. 6, 8, 20

NYLL 195(3) ........................................................................................................ 4, 18

## **RULES**

CPLR § 205(a) ......................................................................................................... 14

CPLR § 901(b) ......................................................................................................... 18

FRCP 11(b)(3) .................................................................................................. passim

v

FRCP 12(b)(6) .................................................................................................................... 4

FRCP 54.................................................................................................................... 2, 27

## PRELIMINARY STATEMENT

Defendants, MG Wholesale Distribution, Inc., "Andy" Cheung, and Xiao Min Yang, (collectively as "Defendants"), who obtained the complete dismissal of this lawsuit and had judgment entered in their favor, now file this brief in support of their motion for sanctions against Plaintiff, Yu Sen Chen ("Plaintiff"), and Plaintiff's Counsel, Hang & Associates, P.L.L.C., ("Plaintiff's Counsel"), pursuant to 28 U.S.C. § 1927 ("Section 1927"), the Court's inherent authority, and Federal Rule of Civil Procedure 11(b)(3) ("Rule 11").

Specifically, Defendants move for sanctions against Plaintiff's Counsel only under Section 1927 for their unreasonable, vexatious, and repeated multiplication of these proceedings, as evidenced by their, inter alia: (a) invoking the jurisdiction of this court based only on two Fair Labor Standards Act ("FLSA") claims for alleged unpaid overtime and minimum wages, the former of which had zero legal basis and the latter of which had zero factual basis, for the sole purpose of attempting to obtain conditional certification of a 29 U.S.C. 216(b) collective action - - a mechanism not available under state law - - distribute notice, and stumble upon an individual whom they hoped might have legitimate federal claims to keep this matter in this court; (b) insisting on immediately moving for conditional certification and leave to distribute notice and refusing to stipulate to toll the statute of limitations for the putative collective members' claims while the parties litigated Plaintiff's individual FLSA claims, a tactic that Judge Mann called "inexplicabl[e]" in the decision and order that Judge Mann was forced to write due to Plaintiff's refusal to stipulate; (c) refusing to agree to the dismissal of their New York Labor Law ("NYLL") § 195(1) claim after Defendants conclusively demonstrated that it had zero legal basis given the allegations in Plaintiff's complaint, thereby forcing the Court to issue an opinion on that claim's dismissal; (d) after Plaintiff's deposition testimony conclusively confirmed that there was zero

1

factual basis to continue pursuing Plaintiff's FLSA minimum wage claim, the lone remaining federal claim in this case by that time, and after Defendants requested to move for summary judgment on that claim right then and there without the need for further discovery, opposing that request, and then needlessly going forward with Defendants' depositions and aggressively pursuing other discovery, including from electronic sources, in the hope of uncovering the identity of a potential new plaintiff who might enable them to keep this case in federal court; (e) filing and improperly attempting to leverage a subsequent action in State Court based on predominately the same facts and legal theories as the instant federal action for alleged untimely wage payments pursuant to section 191 of the NYLL, a claim that Plaintiff's Counsel could have included in the instant federal action but held back for tactical reasons to gain a negotiating advantage in this proceeding; and (f) after Defendants again wrote to the Court to request a pre-motion conference for their forthcoming summary judgment motion at the end of discovery, the basis of which remained unchanged from their first request that Plaintiff opposed, and after the Court, at that conference, inquired as to what evidence Plaintiff had to oppose the motion, conceding that Plaintiff had no such evidence yet refusing to consent to the dismissal of the lawsuit for the admitted reason of gaining a tactical advantage in the still-pending State Court action, which forced Defendants to then incur tremendous expense to brief their motion and the Court to write an opinion, in which the Court noted that there was "**not a scintilla of evidence**" to support Plaintiff's remaining federal claim.  Any one of these tactics on its own would evidence subjective bad faith and objectively unreasonable conduct so as to warrant the imposition of Section 1927 sanctions. The combination of them is the precise definition of vexatiously multiplying proceedings, the

abusiveness of which that statute is meant to curtail.  As a result, Plaintiff's Counsel should be ordered to pay Defendants their entire attorney's fees incurred defending this action.[1]

Additionally, Defendants also move against both Plaintiff and his counsel under the Court's inherent authority for the same frivolous and bad faith litigation practices as just described, the granting of which would also entitle Defendants to recover their entire attorney's fees spent defending this case.

Lastly, at minimum, Defendants move pursuant to Rule 11, against both Plaintiff and Plaintiff's Counsel, to recover their fees incurred for all times after the expiration of the twenty-one day safe harbor that was borne when Defendants served Plaintiff with a notice of Rule 11 motion and letter setting forth the baselessness of Plaintiff's FLSA minimum wage claim.  At the very least, Plaintiff's and Plaintiff's Counsel's conduct in refusing to withdraw Plaintiff's FLSA minimum wage claim after that expiration, after filing a complaint containing that claim and baseless factual allegations supporting it without a court-confirmed scintilla of evidence, was again, at bottom, unreasonable.  Indeed, Plaintiff's Counsel could have simply asked Plaintiff about his hours and his pay before filing the complaint and certainly during the twenty-one day safe harbor period, the same as Defendants did at Plaintiff's deposition.  Plaintiff's answers to

---

[1] On December 5, 2017, Defendants submitted a revised Bill of Costs pursuant to Fed. R. Civ. P. 54. (Dkt. No. 62), the taxation of which is not dependent on the outcome of this motion. See Hargroves v. City of New York, 2014 WL 1270585, at *19 (E.D.N.Y. Jan. 6, 2014), report and recommendation adopted, 2014 WL 1271039 (E.D.N.Y. Mar. 26, 2014) (quoting Fed. R. Civ. P. 54) ("'costs-other than attorney's fees—should be allowed to the prevailing party'"); see also Mercy v. Suffolk Cty., New York, 748 F.2d 52, 54 (2d Cir. 1984) ("The award of costs against the losing party is a normal incident of civil litigation and is the rule rather than the exception"); Dagen v. CFC Grp. Holdings, Ltd., 2004 WL 856539, at *5 (S.D.N.Y. Apr. 21, 2004) (holding that while a prevailing party is entitled to costs under Rule 54, the rule "does not contemplate the imposition of attorneys' fees and other related expenses except by order of the court" in which event, "a court may exercise its inherent power to award attorneys' fees where a party acts in bad faith by wantonly asserting a colorless claim for the purposes of harassment or delay or for other improper purposes").

straightforward questions would have confirmed the factual baselessness of his FLSA claims. Counsel obviously did not, and the result was Plaintiff's Counsel signing and filing a pleading, which Plaintiff presumably approved, that was filled with allegations that contained zero factual support and that were downright untrue.

## **RELEVANT PROCEDURAL HISTORY**

On August 9, 2016, Plaintiff commenced this action against Defendants claiming violations of the overtime and minimum wage provisions of the FLSA and NYLL, the spread of hours provisions of the NYLL, and the wage notice and wage statement provisions of Section 195(1) and 195(3) of the NYLL. Dkt. No. 1; Exhibit 1 to Declaration of Dong Phuong V. Nguyen ("Nguyen Decl."), ("Complaint" or "Ex. 1"). The Complaint alleged that the Court had subject matter jurisdiction over the FLSA claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the NYLL claims pursuant to 28 U.S.C. § 1367. Complaint, ¶ 5. The Complaint did not allege any other basis to invoke the Court's jurisdiction over the subject matter of this lawsuit, such as pursuant to 28 U.S.C. § 1332. See generally Complaint. Specifically, in the Complaint, Plaintiff claimed that he worked seventy-eight to eighty-four hours per week from June 1996 to December 2014, and seventy-two to eighty-one hours per week from January 2015 to August 3, 2016. Complaint, ¶¶ 20-21. For that alleged work, Plaintiff claimed that he was paid a flat weekly cash rate, but also claimed that he was paid from $2,100 per month in 2011 and "[e]very six months after that, Plaintiff received a raise of $50 per month" for a final wage of $2,600 in 2016. Id. at ¶¶ 22-24.

On September 6, 2016, in lieu of filing an Answer, pursuant to Rule 3A of this Court's Individual Practices and Rules ("Rules"), Defendants requested a pre-motion conference in anticipation of their partial motion to dismiss Plaintiff's sixth cause of action, pursuant to Federal

4

Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6) for failure to state a claim, which alleged their failure to provide Plaintiff with a wage notice at hire under NYLL § 195(1). Dkt. No. 10. Specifically, Defendants argued that courts in the Second Circuit have consistently held that section 195(1) of the NYLL is not retroactive and that there is no private right of action for an employer's failure to provide wage notices annually, and therefore, because Plaintiff alleged that he was hired in June 1996, long before the enactment of section 195(1) on April 9, 2011, Plaintiff's NYLL § 195(1) claim must be dismissed as a matter of law and any request to amend the Complaint to add a claim for failure to provide wage notices annually would be futile. Id. Plaintiff failed to respond to Defendants' request for a pre-motion conference by September 21, 2016, the deadline pursuant to 3(A) of this Court's Rules.

Shortly after Defendants filed their motion, wasting no time at all in attempting to multiply the parties to this proceeding, also on September 6, 2016, Plaintiff requested his first pre-motion conference in anticipation of Plaintiff's motion for conditional certification pursuant to 29 U.S.C. § 216(b) ("216(b)") and leave to distribute notice to all those to whom Defendants allegedly did not pay overtime and minimum wages under the FLSA. Dkt. No. 11.  On September 13, 2016, Defendants opposed Plaintiff's request to send out 216(b) notices as premature on the basis that it would be more efficient to litigate the threshold issue of whether Plaintiff himself was entitled to overtime wages or was exempt under the Motor Carrier's Act ("MCA") and corresponding state provision. Dkt. No. 12.  Defendants further contended that Plaintiff's exempt status under the MCA, combined with, inter alia, their "detailed records [throughout the entire FLSA statutory period], will entirely dispose of Plaintiff's individual claims . . . making the distribution of notice now an unnecessary diversion, as any person who opts-in will ultimately be dismissed." Id. However, to avoid any prejudice to the putative FLSA opt-in plaintiffs, Defendants also offered to

toll the statute of limitations for them during the individual discovery period and any subsequent motion practice. Id.

On September 19, 2016, Judge Mann conducted a telephonic pre-motion conference in connection with Plaintiff's anticipated 216(b) motion, in which she explicitly "encourage[d] plaintiff to agree to toll the statute of limitations and defer briefing the conditional certification issue until after the exemption issue has been resolved," and directed Plaintiff's Counsel to file a status report notifying the court whether Plaintiff would so consent by September 23, 2016. Dkt. No. 13.  Additionally, Judge Mann directed Plaintiff to respond to Defendants' September 6, 2016 request for pre-motion conference in anticipation of their partial motion to dismiss by September 21, 2016, as Plaintiff had not yet done so in violation of this Court's rules. Id.  Judge Mann further clarified that the conference would also act as the Initial Conference and thus set the discovery deadline for January 31, 2017. Id.

Pursuant to Judge Mann's September 19, 2016 Order, on September 21, 2016, Plaintiff filed his opposition to Defendants' request for a pre-motion conference regarding Defendants' anticipated partial motion to dismiss Plaintiff's NYLL § 195(1) claim, arguing that Plaintiff did not ever receive a wage notice and "Defendants' failure to provide notices at the time of Plaintiff's hire does not extinguish his obligation to do so after." Dkt. No. 14.  Plaintiff further argued that he was entitled to statutory damages for Defendants' failure to provide annual notices, and based that contention upon case law that granted damages for wage statement violations pursuant to a different statute, NYLL § 195(3). Id.  Shortly thereafter, in an effort to avoid needless litigation over the issues, on September 22, 2016, Defendants' counsel contacted Plaintiff's Counsel via telephone to discuss Defendants' belief that Plaintiff was exempt from overtime wages under the MCA, and further, that as detailed in Defendants' September 6, 2016 letter, Plaintiff's NYLL §

6

195(1) claim failed on its face.  Plaintiff's Counsel vehemently disagreed and refused to withdraw either claim. See Exhibit 2 to Nguyen Decl. ("Ex. 2").

On September 27, 2016, in light of Judge Mann's September 19, 2016 Order that directed Plaintiff's Counsel to file a status report by September 23, 2016 with respect to whether Plaintiff would agree to defer his 216(b) motion in exchange for tolling while his individual claims were litigated, and Plaintiff's Counsel's failure to do so in disregard of that order, Judge Mann ordered Plaintiff's Counsel to show cause by September 28, 2016, as to why Plaintiff's Counsel should not be sanctioned for noncompliance with the court's directive. Dkt. No. 16.  Later that day, Plaintiff's Counsel responded to Judge Mann's Order to Show Cause by expressly refusing to defer Plaintiff's 216(b) motion in exchange for tolling upon the contention that Plaintiff's FLSA minimum wage claim would not be affected even if Plaintiff were exempt under the MCA, and thus Plaintiff should be permitted to move under 216(b) at once. Dkt. No. 17.  Plaintiff's letter did not address the fatal factual weakness with his FLSA minimum wage claim that Defendants had pointed out.  On September 28, 2016, Defendants filed a reply in further support of their request to delay the issuance of a briefing schedule for Plaintiff's 216(b) motion until after the threshold issues of whether Plaintiff even had valid (or even colorable) individual FLSA claims had been resolved. Dkt. No. 18.

Also on September 28, 2016, Defendants sent Plaintiff's Counsel a Notice of Motion, accompanied by a letter brief pursuant to Rule 11, demanding that Plaintiff withdraw his third and fourth causes of action contained in the Complaint for, respectively, alleged violations of the overtime provisions of the FLSA and the NYLL, as well as that portion of his sixth cause of action for wage notice violations under NYLL § 195(1), within twenty-one days of the date of service. Ex. 2.  Defendants' papers clearly indicated that should Plaintiff fail to withdraw these claims at

the expiration of the twenty-one day period, or by October 19, 2016, Defendants intended to move for sanctions in accordance with Rule 11(b)(2) and 11(b)(3), as Plaintiff's third, fourth, and sixth claims were frivolous, unsupported by law, and lacked evidentiary support. Id.  On September 30, 2016, at Judge Mann's directive during the initial teleconference, Defendants filed an Answer to the Complaint. Dkt. No. 20, Nguyen Decl. at Ex. 3 ("Answer").

Shortly thereafter, on October 4, 2016, Defendants filed a supplement to their September 28, 2016 reply to provide Judge Mann with a just-issued decision from Magistrate Judge Go, dated September 28, 2016, which directly addressed an issue raised in Plaintiff's September 6, 2016 initial request to move for conditional certification.  Specifically, in the September 28, 2016 decision, Judge Go stated that "[i]n order to bring a collective action, plaintiff must first show that he, himself, was subject to a FLSA violation." Dkt. No. 21.  Defendants argued that Judge Go's decision further supported their assertion that Plaintiff's request to move for conditional certification was premature as there was a legitimate question as to the viability of Plaintiff's FLSA overtime and minimum wage claims, and that pursuant to Rule 1, it would be most efficient to resolve Plaintiff's individual claims first. Id.

On October 11, 2016, this Court, converting Defendants' request for a pre-motion conference into a motion, dismissed with prejudice Plaintiff's NYLL § 195(1) claim for failure to state a claim, and in doing so, highlighted Plaintiff's failure to distinguish between NYLL § 195(1) and NYLL § 195(3) when citing supporting caselaw. Dkt. No. 22 ("[T]he other cases on which Plaintiff heavily relies, Ayala v. Looks Great Servs. [2016 WL 3541548, at *1 (E.D.N.Y. June 23, 2016)] . . . involves a discussion of NYLL § 195(3) (which Defendants do not seek to dismiss here) and *not* NYLL § 195(1)") (emphasis in original).  And thus, at that junction, Plaintiff's

remaining claims were for unpaid overtime and minimum wage under the FLSA and NYLL, and spread of hours and wage statement claims under the NYLL.

Because Plaintiff failed to withdraw his overtime claims by October 19, 2017, the end of the twenty-one day safe-harbor period, and not knowing if Plaintiff intended to do so at a later date, Defendants were forced to prepare discovery requests that encompassed Plaintiff's alleged overtime claims so that they would be able to litigate and defend against those claims. And thus, on October 19, 2016, Defendants served their discovery requests on Plaintiff. On November 16, 2016, only after Defendants sent Plaintiff multiple emails to follow up, see Exhibit 4 to Nguyen Decl. ("Ex. 4"), the parties filed a stipulation of voluntary dismissal with prejudice as to Count III and Count IV of the complaint for unpaid overtime wages under the FLSA and NYLL, which the Court so-ordered on November 18, 2016.[2] And thus, at this juncture, Plaintiff's only remaining claims in this action were for unpaid minimum wages under the FLSA and NYLL, spread of hours under the NYLL, and wage statement violations under NYLL § 195(3).

On October 20, 2016, Judge Mann issued a Memorandum and Order denying Plaintiff's request for the Court to set a briefing schedule on his anticipated 216(b) motion without prejudice, noting that "Plaintiff failed to demonstrate that any prejudice will result from deferring the issue of conditional certification, and would be hard pressed to do so given [D]efendants' consent to

---

[2] While negotiating the terms of the stipulation to dismiss, counsel for both parties agreed to dismissal of the FLSA and NYLL overtime claims with prejudice and that the stipulation would not address if there would be an award of costs or fees to any party or if there would not be, as Defendants expressly reserved the right to move for sanctions with respect to those claims. Yet Plaintiff's Counsel, when drafting the stipulation and hoping to catch Defendants' counsel sleeping, attempted to renege on the agreed terms by inserting language making the dismissal without prejudice and stating that it was without an award of costs or fees to any party. Defendants refused on both scores, and Plaintiff was thus forced to abide by the terms of the original agreement to dismiss the overtime claims with prejudice with the filed stipulation intentionally silent as to each party's ability to recover fees and costs with respect to those claims. See Ex. 4.

9

tolling the limitations period for any potential opt-in plaintiffs" and further calling Plaintiff's refusal to consent to Defendants' offer to toll as "inexplicabl[e]." Dkt. No. 24. Judge Mann further explained that because "Defendants have raised . . . potentially dispositive issues with plaintiff's FLSA claims . . . which could result in dismissal of all of plaintiff's causes of action under the FLSA and render moot any motion for conditional certification . . . [u]nder these circumstances, it makes little sense to devote the resources of the parties and the Court to the issue of conditional certification until it is clear that [P]laintiff's claims under the [FLSA] will survive summary judgment." Id.

Undeterred, in the midst of discovery into Plaintiff's individual claims and before the Defendants had fully deposed Plaintiff, on December 23, 2016, in complete disregard of Judge Mann's Order denying Plaintiff's first request for a pre-motion conference on the basis that there were "colorable, potentially dispositive issues with plaintiff's FLSA claims . . . which could result in dismissal of all of plaintiff's causes of action under the FLSA and render moot any motion for conditional certification," Dkt. No. 24, Plaintiff amazingly filed a second letter motion to request a pre-motion conference so that he could move for conditional certification. Dkt. 32. In response to that letter, on December 27, 2016, Judge Mann issued a scheduling order for the parties to appear by telephone the next day, and on December 28, 2016, after the telephonic conference, Judge Mann again deferred Plaintiff's motion for conditional certification until after the January 30 settlement conference and dispositive motion practice on the basis that Plaintiff may not individually have viable federal claims, and therefore would not be an adequate class representative. Dkt. 33. Judge Mann noted that "[t]he statute of limitations continued to be tolled." Id.

Defendants deposed Plaintiff on December 8 and December 29, 2016, during which, even though he alleged in his Complaint that he worked between seventy-two and eighty-four hours per

week, Plaintiff clearly and unequivocally testified that he worked only ten to twelve hours a day, six days a week, for a total of between sixty to seventy-two hours a week. Plaintiff further confirmed that Defendants always paid him at least $1,100 biweekly, or $550 each week, which meant, taking him at his own word, that Defendants paid him significantly above the federal minimum wage for each hour he worked.[3] Notwithstanding that obvious testimony that disposed of his remaining federal claim, on January 3, 2017, Plaintiff served his Second Request for Production of Documents, in which he requested EZ-pass and toll records, records of parking or traffic violations, CCTV footage, driving logs, and original copies of Plaintiff's signed wage and time records.

On January 11, 2017, in light of Plaintiff's clear testimony as to his hours worked and pay received that showed that he had no viable federal minimum wage claim, and not wanting to wastefully expend any more money defending against a frivolous case, Defendants filed their request for a pre-motion conference in anticipation of their motion for summary judgment, seeking an order dismissing with prejudice Plaintiff's only remaining federal claim for unpaid minimum wages, declining to exercise supplemental jurisdiction over any of Plaintiff's remaining state claims, and staying any further discovery pending the resolution of Defendants' motion. Dkt. 34. On January 17, 2017, Plaintiff filed his opposition to Defendants' request to move dispositively at that time, and in an egregious attempt to multiply discovery to try and add new plaintiffs despite knowing that his individual lawsuit was shot, argued that Defendants' arguments in support of

---

[3] In the Court's November 14, 2017 Decision and Order, after weighing the Plaintiff's testimony, the Court found that "[e]ven assuming Plaintiff worked until 9:00 p.m. on his 'late' days, he worked a maximum of 80 hours per week, which is still below the 81-hour per week minimum threshold Plaintiff agrees is required [to] establish a FLSA [minimum wage] violation." Yu Sen Chen v. MG Wholesale Distribution Inc., 2017 WL 5499786, at *n. 7 (E.D.N.Y. Nov. 14, 2017).

their proposed motion for summary judgment "lack[ed] any merit in law or in fact and demonstrate a clear attempt to mislead the Court." Dkt. 35.  Specifically, Plaintiff argued that because Plaintiff "stated with certainty that the time records provided could not be accurate as there were extreme deviations from hours he actually worked," Defendants' request for a pre-motion conference regarding their anticipated motion for summary judgment was pre-mature. Id.  Plaintiff did not address how his own sworn admissions as to his hours and pay destroyed his case, regardless of the accuracy of Defendants' records, and instead pressed that "substantial discovery [was] still needed for Plaintiff to have the opportunity to prove his case." Id.

Acting more aggressively, on January 18, 2017, Plaintiff filed an affirmative motion to compel Defendants' depositions and the production of various voluminous documents, including EZ Pass records, security footage, drivers' logs, and original versions of Plaintiff's time and wage records, and in it, baselessly accused Defendants of a "systematic fraud . . . relating to MG Wholesale's records, and time keeping procedures." Dkt. 36.  On January 20, 2017, the parties appeared for a telephone conference, during which Judge Mann denied Defendants' motion to stay discovery, granted Plaintiff's motion to compel Defendants' depositions, and denied, without prejudice, Plaintiff's motion to compel responses to supplemental document requests. Dkt. 37.  As a result of Judge Mann's January 20, 2017 Order, on January 23, 2017, this Court deferred its ruling on Defendants' request for a pre-motion conference in anticipation of their motion for summary judgment, with leave to renew their request by February 17, 2017, after the conclusion of discovery. See Judge Chen's January 23, 2017 Order.  On January 26, 2017, Plaintiff deposed Defendants Xiao Min Yang and Andy Cheung, during which - - confirming that Plaintiff's Counsel's goal in taking this discovery was to unearth an employee to swap in as the lead-plaintiff and then make a third request to send out notice - - Plaintiff's Counsel questioned Defendants

Cheung and Yang extensively about the number of other drivers and driver's helpers that Defendants employed, their work duties, work schedules, and wages received, whether those wages were above the minimum wage and included overtime premiums, and their method of payment.[4]

On January 30, 2017, the parties appeared for a settlement conference before Judge Mann that was unsuccessful. Dkt. 40.  On February 8, 2017, Plaintiff filed a separate lawsuit against Defendants in Queens County Supreme Court, Index No. 701883/2017, for Defendants' alleged failure to pay Plaintiff his wages within seven days of the end of the week in which wages were earned, in supposed violation of NYLL § 191. Exhibit 7 to Nguyen Decl. ("Ex. 7").

On February 17, 2017, Defendants filed their second motion for a pre-motion conference with respect to Defendants' Motion for Summary Judgment, seeking the same relief as in their first letter on the topic. Dkt. 45.  When Plaintiff failed to respond to Defendants' letter by February 28, 2017 pursuant to 3(A) of the Court's Rules, (the third such time this occurred in this case), the Court directed Plaintiff to respond by March 3, 2017.  On that date, Plaintiff responded and informed the Court, for the first time, of Plaintiff's separate lawsuit against Defendants in State Court, and then opposed Defendants' request for a pre-motion conference by disputing Defendants' characterization of the number of hours that Plaintiff worked, again without addressing Plaintiff's own sworn admissions. Dkt. 46.  Additionally in Plaintiff's March 3 opposition letter, essentially conceding that there was absolutely no basis to continuing pursuing Plaintiff's FLSA minimum wage claim, but yet refusing to consent to the relief that Defendants

---

[4] Deposition of Andy "Chung," taken by William Brown, Jan. 26, 2017, 34:4-37:9.  Deposition of Xiao Min Yang, taken by William Brown, Jan. 26, 2017, 25:16-34:14.  Relevant excerpts attached as Exhibits 5 and 6 to the Nguyen Decl,, respectively.

were requesting, i.e., dismissal of it, Plaintiff, bargaining for a tactical advantage in the State Court litigation, expressed a "willingness to forgo" his federal minimum wage claim in exchange for Defendants' agreement to permit Plaintiff to join his remaining state law claims to the state action and to agree to the tolling of the statute of limitations of those claims from the date of Plaintiff's original federal filing "to prevent unnecessary motion practice as well as duplicative proceedings in two separate courts." Id.  In doing so, not only did Plaintiff essentially concede that Plaintiff did not have any viable basis for his remaining federal claim, but he also rejected Defendants' reasonable proposal that counsel extended in earlier settlement negotiations to stipulate to summary judgment against the Plaintiff, which would serve as a final judgment on the merits, preclude the need for dispositive motion practice in this case, and would also resolve Plaintiff's statute of limitations concern pursuant to New York Civil Practice Law and Rules ("CPLR") § 205(a). See Exhibit 8 to Nguyen Decl. ("Ex. 8").  And thus, Defendants were forced to expend a significant amount of time litigating the remaining meritless FLSA minimum wage claim, including drafting and filing Defendants' motion for summary judgment and reply papers.

After that exchange of filings, as it was clear that Plaintiff had no good faith basis to continue litigating his FLSA minimum wage claim, on March 17, 2017, Defendants sent Plaintiff a second Rule 11 Notice of Motion accompanied by a letter brief, demanding that Plaintiff withdraw his FLSA minimum wage claim within twenty-one days of the date of the letter. Exhibit 9 to Nguyen Decl. ("Ex. 9").  Specifically, as they wrote in their letter to the Court requesting a pre-motion conference, Defendants explained that Plaintiff's own testimony conclusively defeated his federal minimum wage claim on its face, and as such, it was undisputed that Plaintiff has no viable federal minimum wage claim and it was frivolous for him to continue litigating it. Id. Defendants informed Plaintiff that, should he not withdraw this claim by April 7, 2017,

Defendants, in addition to moving for summary judgment with respect to it, intended to move for sanctions in accordance with Fed. R. Civ. P. 11(b)(3).  Plaintiff failed to do so.

On April 10, 2017, the parties appeared for the pre-motion conference, during which the Court set a briefing schedule for Defendants' Motion for Summary Judgment.  During that conference, the parties discussed the merits of Defendants' Motion for Summary Judgment and what opposition Plaintiff would mount in its face.  Despite it being clear that there was no evidentiary basis to oppose the motion, Plaintiff again refused to consent to Defendants' proposal of stipulating to summary judgment being entered against him so as to avoid unnecessary and wasteful motion practice.  On May 10, 2017, Defendants served their Motion for Summary Judgment, seeking an order dismissing Plaintiff's only remaining federal claim on the merits and declining to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. Dkts. 51-54.  Plaintiff served his Opposition to Defendants' Motion on Defendants on June 28, 2017, which was utterly devoid of any evidence to oppose Defendants' requested relief. Dkt. 56. Defendants served their Reply in Further Support of Defendants' Motion for Summary Judgment on July 17, 2017. Dkt. 55.

On November 14, 2017, the Court granted Defendants' Motion for Summary Judgment in its entirety, thereby dismissing Plaintiff's sole remaining federal claim for alleged FLSA minimum wage violations and declining to exercise supplemental jurisdiction over the remaining state claims.  In doing so, the Court expressly found that that "there is not a scintilla of evidence on which a fair minded jury could return a verdict for [Plaintiff]," (internal citations and quotations omitted), and directed the Clerk to enter judgment against Plaintiff and terminate the case. Chen, 2017 WL 5499786 at *4.  On November 15, 2017, the Clerk of the Court entered judgment and terminated the case. Dkt. 59.  On November 22, 2017, Defendants requested a briefing schedule

15

for their anticipated motion for sanctions pursuant to Section 1927 and Rule 11, and in an abundance of caution, an extension of time to move for relief pursuant to the Court's inherent power. Dkt. 60.  On November 27, 2017, the Court granted the request and ordered Defendants to file their motion for sanctions by December 22, 2017.  As such, Defendants now submit their motion.

## ARGUMENT

## I.   THE COURT SHOULD SANCTION PLAINTIFF'S COUNSEL PURSUANT TO 28 U.S.C. § 1927

"By its terms, § 1927 looks to unreasonable and vexatious multiplications of proceedings; and it imposes an obligation on attorneys throughout the entire litigation to avoid dilatory tactics." United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO, 948 F.2d 1338, 1345 (2d Cir. 1991) (citing Oliveri v. Thompson, 803 F.2d 1265, 1274 (2d Cir. 1986)).  "Imposition of a sanction under § 1927 requires a 'clear showing of bad faith.'" Oliveri, 803 F.2d at 1273 (quoting Kamen v. American Telephone & Telegraph Co., 791 F.2d 1006, 1010 (2d Cir. 1986)).  "Like an award made pursuant to the court's inherent power, an award under § 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose." Id.  "The sanctions authorized under section 1927 are not . . . triggered because a lawyer vigorously and zealously pressed his client's interests.  To justify the imposition of [sanctions, an attorney's conduct] must be of an egregious nature, stamped by bad faith that is violative of recognized standards in the conduct of litigation." Colucci v. New York Times Co., 533 F.Supp. 1011, 1013-14 (S.D.N.Y. 1982); Lynch v. United Servs. Auto. Ass'n, 491 F. Supp. 2d 357, 366 (S.D.N.Y. 2007).  "Thus, to prevail on its motion for sanctions under § 1927 . . . Defendant must prove that Plaintiff's claim was not colorable at the time he commenced this action or at some point during the proceedings

became uncolorable and that Plaintiff either commenced or continued this action for reasons of harassment, delay, or other improper purposes. Kron v. Moravia Cent. Sch. Dist., 2001 WL 536274, at *4 (N.D.N.Y. May 3, 2001). "[A] claim lacks a colorable basis when it is utterly devoid of a legal or factual basis." Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 337 (2d Cir. 1999); Capone v. Patchogue-Medford Union Free Sch. Dist., 2010 WL 2771845, at *4 (E.D.N.Y. July 13, 2010) (awarding Section 1927 sanctions where plaintiff's attorney refused to withdraw the complaint "despite clear deficiencies in the claims presented")

Here, Plaintiff's Counsel has unreasonably, vexatiously, and repeatedly multiplied proceedings at every juncture of this litigation. At the onset, knowing that there was no basis to file this action in federal court nor include a cause of action for wage notice violations under NYLL § 195(1), but wanting to include as many claims as possible on behalf of a putative collective/class, Plaintiff's Counsel filed a complaint that was replete with baseless claims. Specifically, despite alleging that Plaintiff worked as a driver's helper/loader, and thus was clearly exempt under the MCA from overtime wages, see e.g., McBeth v. Gabrielli Truck Sales, Ltd., 768 F. Supp. 2d 383, 390 (E.D.N.Y. 2010) (citing 29 C.F.R. § 782.2(b)(2)(i)(ii))) ("The Department of Labor interprets the motor carrier exemption to apply to drivers, driver's helpers, loaders, or mechanics whose work directly affects the safety of operation of vehicles on the public highways in transportation in interstate or foreign commerce within the meaning of the MCA"), Plaintiff's Counsel included unpaid overtime claims in the Complaint. See Ex. 1. Plaintiff's Counsel acknowledged that including these claims was frivolous in stipulating to withdraw them after being threatened under Rule 11.

Adding to this, in the Complaint, Plaintiff's Counsel also grossly inflated Plaintiff's work hours so that they could include a federal minimum wage claim. It is clear that Plaintiff's Counsel

17

did so because had Plaintiff's Counsel simply actually asked Plaintiff what his hours and pay were prior to filing the Complaint, it would have been clear that Plaintiff had no factual basis to assert a federal minimum wage claim. Indeed, as Plaintiff clearly admitted in his deposition, he worked, at most, seventy-two hours a week, and was paid at least $1,100 every pay period, for an effective hourly rate of $7.64, at minimum, during the relevant period in which the federal minimum wage was $7.25 at all time. See 29 U.S.C. § 206(a)(1)(C). Yet, in the Complaint, Plaintiff alleged that he worked from seventy-two up to eighty-four hours each week and received a weekly salary that amounted to between $2,100 and $2,600 a month during various periods in his employment. See Ex. 1, ¶¶ 20-24. Thus, Plaintiff clearly had no viable federal minimum wage claim. Either Plaintiff's Counsel did not ask Plaintiff these most basic of questions prior to filing or they did and did not accept Plaintiff's answer in structuring the pleading. Either alternative is sanctionable.

And there is a simple explanation for why Plaintiff's Counsel took this tactic. First, by filing in federal court, Plaintiff's Counsel hoped to obtain the ability to send notice to all putative collective members, a mechanism that is not available in state court as there is no equivalent to 29 U.S.C. 216(b), the federal provision that provides for conditional certification and notice. Second, by filing in federal court, Plaintiff's Counsel hoped to take advantage of Rule 23, as CPLR § 901(b) specifically precludes certification of "a class action seeking both statutory penalties and other remedies," see Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 402 (2010), which meant that Plaintiff would not be able to recover liquidated damages or NYLL §§ 195(1)/195(3) penalties had Plaintiff filed his class claims in state court. Thus, it is clear that Plaintiff's Counsel, despite knowing that there was no basis for federal jurisdiction, filed in federal court anyway, hoping to obtain early certification, distribute notice, find a plaintiff with actual federal claims, and proceed under Rule 23 to recover class-wide liquidated damages. This much

18

is clear based on Plaintiff's Counsel repeated attempts to move for conditional certification and to send out notices early in the case.

Indeed, wanting to move quickly to find a plaintiff with actual federal claims, Plaintiff's Counsel filed the first of two requests for a pre-motion conference in anticipation of Plaintiff's motion for conditional certification and to send out notices.   After Defendants objected to Plaintiff's request on the basis that the parties should first litigate the threshold matter of Plaintiff's individual FLSA claims, but offering to toll the statute of limitations for the putative FLSA opt-in plaintiffs in the meantime, Plaintiff's Counsel rejected Defendants' reasonable offer and continued to do so even after a pre-motion conference with Judge Mann during which she "encourage[d]" Plaintiff's Counsel to accept Defendants' offer to toll. Dkt. No. 13.   Then, after completely ignoring Judge Mann's order to timely file a status report to notify the court whether Plaintiff would consent to Defendants' offer to toll, Plaintiff's Counsel continued to refuse to consent to toll the statute of limitations upon the contention that Plaintiff's FLSA minimum wage claim would not be affected even if Plaintiff were exempt under the MCA, an argument that did not address the issue of tolling.   Judge Mann found this conduct "inexplicabl[e]" and held that "it ma[de] little sense to devote the resources of the parties and the Court to the issue of conditional certification until it is clear that plaintiff's claims under the [FLSA] will survive summary judgment." Dkt. 24, 4.

Similar to the overtime and minimum wage claims, there was also no colorable basis to allege wage notice violations under NYLL § 195(1), yet Plaintiff's Counsel did so, and then inexplicably refused to withdraw the claim despite Defendants presenting them with clear caselaw on the issue, thus forcing the Court to issue its October 11, 2016 Order dismissing the cause of action. Dkt. No. 22.   Indeed, it was patently clear that the claim had no basis as Plaintiff alleged

that he was hired in June 1996, long before the enactment of the Wage Theft Prevention Act that conferred a prospective private right of action for NYLL § 195(1) claims on April 9, 2011. On September 6, 2016, Defendants requested a pre-motion conference in anticipation of their partial motion to dismiss Plaintiff's NYLL § 195(1) claim, in which they detailed why the claim had no legal merit. In what would become a pattern, Plaintiff's Counsel refused to respond to Defendants' request for a pre-motion conference and refused to withdraw the patently meritless claim, an issue that Judge Mann had to address in the September 19, 2016 conference by ordering Plaintiff's Counsel to "either respond to defendants' request for a promotion conference . . . or withdraw the sixth cause of action" by September 21, 2016. Dkt. 13. On September 21, 2016, Plaintiff's Counsel submitted an opposition to Defendants' request and in doing so, desperately cited caselaw that addressed wage statements violations under NYLL § 195(3), instead of wage notice violations under NYLL § 195(1). Dkt. No. 14. On October 11, 2016, again because of Plaintiff's Counsel's refusal to accept that Plaintiff's claim was clearly unsupported by caselaw, the Court was forced to expend judicial resources to craft and issue an order dismissing Plaintiff's NYLL § 195(1) claim.

Then, on December 23, 2016, before Defendants had a chance to fully depose Plaintiff and in complete disregard of Judge Mann's order to delay any conditional certification motion until the resolution of all "potentially dispositive issues," Dkt. 24, 4, Plaintiff's Counsel again requested a pre-motion conference to move for conditional certification, Dkt. 32, a request that Judge Mann was forced to address by deferring any motion for conditional certification until after dispositive motion practice. Dkt. 33. Indeed, courts have found bad faith and imposed sanctions under section 1927 for acts such as "repeated frivolous filings," Walker v. Smith, 277 F. Supp. 2d 297, 303 (S.D.N.Y. 2003), and/or "resubmitting a motion that had previously been denied" on the same basis. Keller v. Mobil Corp., 55 F.3d 94, 99 (2d Cir. 1995).

Plaintiff's Counsel also needlessly multiplied proceedings after Plaintiff's deposition testimony made crystal clear that Plaintiff's federal minimum wage claim had no factual basis and grossly contradicted what Plaintiff and his counsel alleged in the Complaint, by continuing to pursue voluminous discovery, opposing Defendants' requests for a pre-motion conference in anticipation of their summary judgment motion, as well as forcing Defendants to move for summary judgment and opposing it for the admitted tactical reason of not wanting to cede tolling in the still-pending state court action.  Indeed, once it became clear that Plaintiff had no viable federal minimum wage claim after his deposition, Plaintiff's Counsel enhanced their campaign to find a suitable replacement plaintiff by aggressively pursuing Defendants' depositions, during which they asked repeatedly about Defendants' pay practices with respect to other drivers and drivers' helpers and whether Defendants paid them at the correct minimum wage.  See Ex. 5 and 6.

Then, once it became clear that Plaintiff's Counsel would not be able to find a suitable candidate through Defendants' depositions, Plaintiff's Counsel then filed a separate state court complaint for untimely wages pursuant to NYLL § 191, a claim that Plaintiff's Counsel knew or should have known about prior to initiating the federal action.  Indeed, despite Plaintiff's Counsel's representation that they only learned about the NYLL § 191 claim "in January during Defendants' depositions," Dkt. No. 46, Plaintiff's Counsel clearly knew about the potential claim from the very start of the federal action as counsel would have asked about Plaintiff's wages when drafting the complaint, and in fact, actually alleged in the Complaint that "[d]uring all relevant periods, Plaintiff was paid a flat weekly rate, in cash." Complaint, ¶ 22.  Instead, sensing that the federal action was on its last legs and finding no suitable replacement plaintiff, Plaintiff's Counsel initiated the state complaint as leverage to settle the federal action.  Once that did not work, Plaintiff's

Counsel then opposed Defendants' request for a pre-motion conference, refused Defendants' offer to stipulate to summary judgement to avoid briefing the motion despite Plaintiff not having an evidentiary basis to oppose the motion, and thus forced Defendants to move.  They then further opposed Defendants' motion, all after conceding that the only basis for Plaintiff's opposition was not related to the merits of the FLSA minimum wage claim, as that claim was, indeed, meritless, but rather the statute of limitations in the state case. See Dkt. No. 46.  And thus, Plaintiff's Counsel vexatiously, needless, and unreasonably multiplied proceedings, for which they should be sanctioned under section 1927. See Galonsky v. Williams, 1997 WL 759445, at *7 (S.D.N.Y. Dec. 10, 1997) (awarding section 1927 sanctions where plaintiff improperly invoked federal jurisdiction and continued to pursue the claims after being warned of their baseless nature).

## II.     THE COURT SHOULD SANCTION PLAINTIFF AND PLAINTIFF'S COUNSEL PURSUANT TO THE COURT'S INHERENT AUTHORITY

"[A] federal court . . . may exercise its inherent power to sanction a party or an attorney who has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Ransmeier v. Mariani, 718 F.3d 64, 68 (2d Cir. 2013).  "[T]he only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power is . . . that awards under § 1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both." Oliveri, 803 F.2d at 1273.  Like Section 1927 sanctions, in order to issue sanctions under its inherent authority, "a court must find clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith—that is, motivated by improper purposes such as harassment or delay." Eisemann v. Greene, 204 F.3d 393, 396 (2d Cir. 2000) (internal quotations omitted).  The "bad faith" required under the court's inherent authority is akin to that under Section 1927 and Rule 11. Oliveri, 803 F.2d at 1273 ("an award made under § 1927

22

must be supported by a finding of bad faith similar to that necessary to invoke the court's inherent power"); <u>Gordon v. Kaleida Health</u>, 2012 WL 1965671, at *2 (W.D.N.Y. May 31, 2012) ("bad-faith resembles Rule 11's requirement that a signer represent to the court that a filing is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation").

All of the arguments as to Plaintiff's Counsel's conduct from the prior section are incorporated herein.  With respect to Plaintiff, while he might not have been familiar with the law, he was certainly familiar with the factual allegations concerning his own hours and pay that his counsel alleged in the Complaint on his behalf.  Yet he allowed his counsel to file a Complaint that, as his later sworn testimony was concerned, was filled with blatantly untrue facts.  The error was not innocent, as it was the only basis on which to hinge a claim for FLSA minimum wages.  And the facts were obviously in Plaintiff's knowledge at all times.  Thus, the Court should sanction both Plaintiff and Plaintiff's Counsel under the Court's inherent authority for the same reason that it should sanction Plaintiff's Counsel under Section 1927.  <u>See</u> <u>Davidson v. Keenan</u>, 740 F.2d 129, 132–33 (2d Cir. 1984) (holding that the plaintiff is not relieved of personal liability for pursuing these baseless claims, even if he acted on his counsel's advice).

## III.   THE COURT SHOULD SANCTION PLAINTIFF AND PLAINTIFF'S COUNSEL PURSUANT TO FED. R. CIV. P. 11(b)(3)

Rule 11 exists to sanction attorneys and/or parties for frivolous filings.  "Rule 11 is violated only when it is patently clear that a claim has absolutely no chance of success." <u>Oliveri</u>, 803 F.2d at 1275.  "'[W]hen divining the point at which an argument turns from merely losing to losing and sanctionable . . . courts [must] resolve all doubts in favor of the signer' of the [paper]." <u>Umar Oriental Rugs, Inc. v. Carlson & Carlson, Inc.</u>, 757 F. Supp. 2d 218, 228 (E.D.N.Y. 2010) (quoting <u>Rodick v. City of Schenectady</u>, 1 F.3d 1341, 1350 (2d Cir. 1993)).  However, Rule 11 sanctions

may be imposed "where it is patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands." Eastway Constr. Corp. v. City of New York, 762 F.2d 243, 254 (2d Cir. 1985); Gambello v. Time Warner Communications, Inc., 186 F. Supp. 2d 209, 229 (E.D.N.Y. 2002) (holding that sanctions are appropriate where "an allegation is utterly lacking in support . . . [and] it is clear that there is no chance of success"); see Simon DeBartolo Group, L.P. v. Richard E. Jacobs Group, Inc., 186 F.3d 157, 166 (2d Cir. 1999) (sanctions are "intended to eliminate any 'empty-head pure-heart' justification for patently frivolous arguments").  "In ruling on a motion for sanctions, 'the initial focus . . . should be on whether an objectively reasonable evidentiary basis for the claim was demonstrated in pretrial proceedings.'" Greenberg v. Hilton Int'l Co., 870 F.2d 926, 934 (2d Cir. 1989) (quoting Calloway v. Marvel Entertainment Group, 854 F.2d 1452 (2d Cir. 1988), cert. granted, 489 U.S. 1009 (1989)).  Indeed, under Rule 11, "a showing of 'bad faith' is not required where the conduct of counsel is at issue . . . [r]ather, an objective standard, focusing on what a reasonably competent attorney would believe, is the proper test." Id. Specifically, Rule 11(b)(3) mandates that:

> [b]y presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . [that] the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

"A litigant's obligations . . . [under Rule 11] are not measured solely as of the time they are filed with or submitted to the court, but include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit." O'Brien v. Alexander, 101 F.3d 1479, 1489 (2d Cir. 1996) (citing 1993 Advisory Committee notes);

24

Ramashwar v. Espinoza, 2006 WL 36752, at *3 (S.D.N.Y. Jan. 6, 2006) (quoting Rule 11, 1993 Advisory Comm. Notes) ("if evidentiary support is not obtained after a reasonable opportunity for further investigation or discovery, the party has a duty under the rule not to persist with that contention"). Indeed, as seen in Elfoulki v. Brannons Sandwich Shop, LLC, a case with which Defendants' firm here is very familiar as the court imposed Rule 11 sanctions on it for, as Plaintiff's Counsel there, the failure to perform an objectively reasonable inquiry into the defendants' annual revenue to verify that they met the FLSA's $500,000 threshold prior to filing the complaint, the court, noting that while an employee may not always know about his employer's annual revenue, held that "a lawyer signing the pleading must be able to certify that 'to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.'" 2016 WL 3542458, at *2 (S.D.N.Y. June 22, 2016), appeal voluntarily dismissed, (July 6, 2016) (quoting Rule 11(b)(3)). "The inquiry need not be infallible but it must be objectively reasonable under the circumstances." Id.

Here, as explained above, at minimum, it is clear that Plaintiff and Plaintiff's Counsel lacked any evidentiary support for the FLSA minimum wage claim when they filed the Complaint and further refused to withdraw that claim when served with a motion demanding its withdrawal. At the onset, Plaintiff's Counsel could not have performed any objectively reasonable inquiry into Plaintiff's work hours and pay prior to filing the Complaint. Had they done so, it would have been clear that Plaintiff had no viable federal minimum wage claim as Plaintiff would have informed them of the same hours and pay to which he testified in his deposition, namely that he worked, at most, seventy-two hours a week and was paid at least $1,100 every pay period, for an effective

hourly rate of $7.64 during the relevant period in which the federal minimum wage was $7.25, see 29 U.S.C. § 206(a)(1)(C), and lacked any evidence to show that he worked greater hours.  Indeed, it would have been clear that the federal minimum wage claim was objectively meritless, lacked any chance of success, and improperly allowed plaintiff to file the complaint in federal court.  If it was sanctionable in Elfoulki for a law firm to not objectively investigate a defendant's gross annual revenue, pre-discovery, in an FLSA case, which is information obviously not in its possession, then there is no strain of logic under which it would not be sanctionable for a law firm to ask its own client the most basic of questions. See also Brignoli v. Balch, Hardy & Scheinman, Inc., 126 F.R.D. 462, 465 (S.D.N.Y. 1989), modified, 1989 WL 146767 (S.D.N.Y. Dec. 1, 1989), on reargument, 735 F.Supp. 100 (S.D.N.Y. 1990) ("Improperly invoking the subject matter jurisdiction of a federal district court is sanctionable under Rule 11"); Perry v. S.Z. Rest. Corp., 45 F. Supp. 2d 272, 275 (S.D.N.Y. 1999) (imposing Rule 11 sanctions where counsel failed to perform reasonable inquiry and holding that "[e]ven if counsel's initial interview with their client *might* have suggested a good faith basis for filing this suit," undisputed evidence produced in discovery "would have prompted an objectively reasonable attorney to make a more thorough examination of his client") (emphasis in original); Fried v. Fried, 113 F.R.D. 103, 108 (S.D.N.Y. 1986) (noting that "once Rule 11 has been violated, sanctions may be imposed upon a party bringing a meritless lawsuit even if all pleadings, motions, or other papers are signed only by counsel").

On March 17, 2017, after numerous phone calls and email correspondence between counsel to explain why Plaintiff's FLSA minimum wage claim was totally baseless, and thus Plaintiff had a duty to withdraw such claim, and following Plaintiff and his counsel's obstinate refusal to do so, Defendants served a Notice of Motion for Rule 11 sanctions, as well as a letter explaining the basis

26

thereof, giving Plaintiff and Plaintiff's Counsel twenty-one days from service, or by April 7, 2017, to withdraw the FLSA minimum wages claim, and warning that failure to do so would force Defendants to incur the great expense of having to move for summary judgment on the FLSA minimum wage claim, in addition to attending the April 10, 2017 pre-motion conference, for which Plaintiff and Plaintiff's Counsel would be ultimately responsible. See Nguyen Decl. at Ex. 9; see also Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd., 682 F.3d 170, 176 (2d Cir. 2012) (holding that "the procedural requirements of the safe harbor provision of Rule 11(c)(2)" are satisfied when a party "served its notice of motion more than 21 days before it filed the motion with the district court; the motion was made separately from any other motion; and the notice of motion described the specific conduct that allegedly violated Rule 11(b)" without need for a memoranda of law or supporting exhibits); Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 334 (2d Cir. 1999) (holding that the Rule 11 notice of motion met procedural requirements where it also "invoked and set forth the standards for sanctions under the District Court's inherent power and 28 U.S.C. § 1927," but "set out in detail the conduct alleged to have been sanctionable" upon all three grounds). Plaintiff and Plaintiff's Counsel failed to do so. And thus, Defendants were forced to move for summary judgment against the meritless FLSA minimum wage claim and incur the expense of what Plaintiff's Counsel, in his March 3, 2017 letter to the Court responding to Defendants' request for a pre-motion conference, admitted to be "unnecessary motion practice as well as duplicative proceedings in two separate courts." Dkt. 46. As such, at minimum, the Court should sanction Plaintiff and Plaintiff's Counsel for their frivolous actions, which the Court aptly deemed as supported by "not a scintilla of evidence," Chen, 2017 WL 5499786 at *4, and order that they reimburse Defendants for all fees and expenses incurred from April 7, 2017 onwards.

27

## IV.   **ATTORNEYS' FEES AND COSTS**

In the present case, to date, the Defendants have incurred $95,133.86 in actual attorneys' fees for 479.40 hours of work and an additional $4,512.89 in costs.  On December 5, 2017, as the prevailing party following the Court's November 14, 2017 Decision and Order, Defendants submitted a revised Bill of Costs pursuant to Fed. R. Civ. 54, Dkt. No. 62, which, as of the time of this submission, has not been taxed.   Under Section 1927 and the Court's inherent powers, Defendants are entitled to reimbursement for the entire fees of having to defend against this action, which, to date, total $95,133.86.  In the alternative, pursuant to Rule 11, Defendants are entitled to reimbursement for fees incurred from the expiration of the twenty-one day safe harbor period on April 7, 2017 until the Court's decision dismissing that claim, in addition to the fees and expenses incurred in making this motion, which to date are in the amount of $19,273.54. See Fed. R. Civ. P. 11 ("the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion").[5]

---

[5] Defendants respectfully request leave to submit updated billing records and expense reports upon submission of their reply papers to account for fees and expenses incurred while preparing this motion. Defendants also, to the extent the Court requires it, request permission to submit any supplemental information concerning the amounts billed, such as attorney biographical information or their retainer agreement with their counsel. See Offor v. Ctr., 2016 WL 3566217, at *5 (E.D.N.Y. June 25, 2016), aff'd sub nom. Offor v. Mercy Med. Ctr., 698 F. App'x 11 (2d Cir. 2017) (directing defendants to submit supplemental support for attorneys' fees after granting sanctions motion); Antonmarchi v. Consol. Edison Co. of New York, 2012 WL 3126004, at *3 (S.D.N.Y. July 31, 2012) (awarding attorneys' fees incurred in making sanctions motion).

## <u>CONCLUSION</u>

For these reasons, Defendants respectfully request that the Court grant Defendants' Motion

for Sanctions pursuant to 28 U.S.C. § 1927, the Court's inherent authority, and Rule 11.

Dated: Great Neck, New York
       December 22, 2017

                                     Respectfully submitted,

                                     BORRELLI & ASSOCIATES, P.L.L.C.
                                     *Attorneys for Defendants*
                                     1010 Northern Boulevard, Suite 328
                                     Great Neck, New York 11021
                                     Tel. (516) 248-5550
                                     Fax. (516) 248-6027

                                     Dong Phuong V. Nguyen (DN 7326)
                                     Alexander T. Coleman (AC 8151)
                                     Michael J. Borrelli (MB 8533)